ALFRED WARNER *et al.,* appellants, v. JOHN B. HELM *et al.,* appellees. *

*Appeal from Madison.*

A mortgage, entered into before the rendition of a judgment, and *bona fide,* for a valuable consideration, is a prior incumbrance to the judgment lien; and the recording of it is deemed notice, in law, to all subsequent incumbrancers by judgment, &c.

A strict foreclosure of a mortgage should not be entered where there are creditors entitled to a surplus, who are not made parties to the suit.

Where the title of property purchased by a plaintiff under execution fails, and the property is recovered back from the creditor, he is entitled to a decree in equity to recover his debt from the judgment debtor. So, where land is sold on execution, to which the defendant in execution has no title, and by reason of such sale, the execution is returned satisfied, the purchaser is entitled to have a decree in equity against the judgment debtor for the purchase money. In some cases, the plaintiff may, on motion, have the levy and sale set aside, and so be permitted to proceed upon his judgment at law.

BILL TO FORECLOSE A MORTGAGE, &c. in the Madison Circuit Court, October term 1843. The cause was heard before the Hon. James Shields, the prayer of the cross bill denied, the bill dismissed, and a strict foreclosure of the mortgage granted.

It was originally a proceeding in Chancery by bill filed by Helm to foreclose a mortgage upon certain lands situate in the county of Madison, and State of Illinois.

Upon the 29th day of May, 1837, B. F. Edwards was indebted to the said John B. Helm, in the sum of $7,000, upon a note made by the said Edwards and payable to the said Helm, due January 14th, 1837. Helm was also security for the said Edwards, together with one Gray, upon another note for $6,000, dated July 6, 1836, and payable in two years after date to the order of one Nathaniel A. Ware, from whom it came by indorsement to Craig & Warner, two of the defendants to said bill. To secure the payment of these two notes, and to indemnify the said Helm against his liability as surety on the second of said notes, the said Edwards executed to

---

* See the case of *Edwards* v. *Helm,* 4 Scam. 142.

the said Helm the mortgage in question, on the said 29th day of May, 1837.

The said Craig & Warner commenced a suit at common law upon their said note for $6,000, to the October term, A. D. 1838, of the Municipal Court of the City of Alton, against the said Edwards, Helm and Gray. Service was had upon Edwards only, the said Helm and Gray being without the jurisdiction of the Court. Judgment was obtained against Edwards alone, execution was duly issued, 'the property embraced in the said mortgage levied upon and sold to the said Craig & Warner, plaintiffs in said suit, for the amount of their judgment, interest and costs, and deeds were duly executed to them upon said sale, by the sheriff of said county of Madison.

The purchase was made for the said Craig & Warner by their attorneys, in ignorance of the existence of said mortgage.

John B. Helm then filed his bill in the Circuit Court of said Madison county, for a foreclosure of his said mortgage against the said Craig & Warner, for the amount due upon his single note for $7,000, upon the ground that by the proceedings aforesaid he had been discharged from his liability as surety upon said note of $6,000, and that the said note had been thereby paid and discharged.

The said Craig & Warner, on the other hand, insist that by virtue of the said mortgage and liability of the said Helm, and notwithstanding the said proceedings, they hold a superior lien, and are entitled to be first paid.

The prayer of the complainant's bill was for a strict foreclosure.

The case stood upon bill and answer, showing the above facts, and moreover, that the said note for $6,000 had been given by the said Edwards to the said Ware for the purchase of a portion of the land mortgaged, and that at the time of the execution of the said mortgage, the said Helm had knowledge of that fact.

Upon the final hearing in the Court below, the Court decreed a strict foreclosure in favor of the said Helm, upon which decree the said plaintiffs sued out their writ of error.

The errors assigned in this Court were as follow:

1. That the Court erred in decreeing that said mortgage be foreclosed as against the said Craig & Warner.

2. In allowing a decree of strict foreclosure.

3. In decreeing that the said complainant recover of the said respondents the sum of money due upon the said mortgage.

4. In not decreeing that the said Craig & Warner be first paid out of the proceeds of said mortgaged property; or

5. That the said Helm should first redeem the said incumbrance of the said Craig & Warner; or

6. In not permitting the said Craig & Warner to come in *pro rata* for the benefit of the said mortgage.

7. In not decreeing that the said mortgaged property be appraised and sold, pursuant to the laws of Illinois; and because,

8. The decree rendered in the said case was against law and equity.

The foregoing original case was heard at the December term of this Court, A. D. 1842. *Edwards* v. *Helm*, 4 Scam. 142. The decision of the Court below was overruled, and the cause remanded, with directions to the Court below to permit the said Craig & Warner to file their cross bill. The said Craig & Warner filed their cross bill at the May term of the said Madison county Circuit Court, against all the parties in interest, including the said Gray, and setting up substantially the same facts as appeared upon bill and answer in the original proceedings herein.

The said cross bill is taken *pro confesso* against the said Gray.

The said Helm, Edwards, Bailey, and Marsh, appear and answer, admitting generally, or not denying the facts as above stated.

The said answers, however, allege further, that the said property embraced in the said mortgage, was worth a sum much greater than the amount of the judgment in favor of the said Craig & Warner; and that the said Edwards had other property of an amount to satisfy the said judgment in

favor of the said Craig & Warner, without a resort to the said mortgaged property.

Depositions were taken to show the value of the said mortgaged property at the time of said sale to the said Craig & Warner, and also to show that the said Edwards had other property upon which a levy might have been made.

The amount of the judgment in favor of Craig & Warner upon their said note was $7,613·27 and costs.

The amount bid, in satisfaction of said judgment, interest and costs, was $8,125·52.

The mortgage embraces a farm in the county of Madison, containing 760 acres.

Five witnesses were called by Helm to fix the value of this farm at the time of sale to Craig & Warner.

The average result of their valuation is, that a fair price for the said farm at that time would have been $4856; but that, at a public sale for cash, it would not have brought more than $2920.

In the levy and sale of said farm to the said Craig & Warner, is embraced forty acres of land, not embraced in the said mortgage, proved by the witnesses to have been worth about fifty dollars.

The remainder of the lands embraced in the said mortgage, are described in said mortgage, as follows:—" Forty five feet front on Second street, and one hundred feet front on Market street, the corner of block 49, in the city of Alton. Also " an undivided half of the remaining part of said block 49," " excepting and reserving an undivided half of 21 feet on Second street, and 70 feet deep;" also excepting " an undivided half of 26 feet on Piasa street, by 70 feet deep;" which said excepted points are said to have been donated to certain purposes.

The levy upon said block 49, in favor of said Craig & Warner, does not except the said 21 feet on Second street, but does except thirty eight feet on Piasa street, running back to the centre of the said block.

Said levy also differs from the mortgage in making said lot at the corner of Second and Market streets to extend 113 feet on said Market street, which was the true dimension of said lot.

The depositions try the value of the said several parcels of said block 49.

The land sold to Craig & Warner exceeds that mortgaged to Helm by the said 40 acres above mentioned, valued at fifty dollars, and the said excess of 13 feet, an undivided half of which is not embraced in said mortgage; also, by an undivided half of said 21 feet on Second street.

The sale excepts 38 feet on Piasa street, by half the depth of the block, (109½ feet.) The mortgage excepts only 28 feet by 70 feet.

The average value set by the witnesses, upon the undivided half of said block 49, excepting the said 45 feet lot, the said 21 feet, and the said 28 feet, estimating "at a fair price," at the time of sale, is - - - - $7405

For said 21 feet on Second street, - - - - 839

For said 28 feet on Piasa street, - - - 784

For said 13 feet on Market street, - - - - 255

For said 45 feet on Second and Market, - - 3031

The cash valuation by same witnesses, as averaged, for said undivided half of block 49, is - - - $5421

For said 28 feet on Piasa street, - - - - 647

For said 21 feet on Second street, - - - 658

For said 13 feet on Market street, - - - 155

For said 45 feet on Second and Market, - - 2283

For a better understanding of these divisions of block 49, the Court was referred to the following diagram:

Second Street.

The size of said block is 226 feet on Market street, by 219 feet on Second street.

The following is a copy of the two levies, under which the property in question was taken and sold.

"Dec. 14, 1838. By virtue of this execution, *and by direction of B. F. Edwards*, one of the defendants in this execution, I have levied upon the following real estate, viz:—The undivided half of block 49, in the town (now City) of Alton, except 45 feet on Second street, running back 113 feet on Market street, and 28 feet on Piasa street, running back to the centre of the block." March 21, 1839, the sheriff returned that he had made nineteen hundred and four dollars by the sale of the property above levied upon, to the plaintiffs.

Upon a second execution, the sheriff returned a levy as follows:—

"June 12, 1839.—By virtue of this execution, I have this day levied upon the following real estate, to wit:"—(describing the remainder of the lands in controversy,) and on the 10th day of July, 1839, returned his said execution as follows: "July 6, 1839, made the balance of this execution, damages, interest and costs by selling the above described real estate to the within named plaintiffs, by their attorneys, Messrs. Cowles & Krum; the lot at the corner of Second and Market streets, in the City of Alton, for two thousand dollars, and the above tracts of land for the further sum of forty two hundred and twenty four $\frac{52}{100}$ dollars."

It was proved that Edwards had other lands of considerable value, which might have been levied on; but it was also proved that the lands in question, were expressly turned out by the said Edwards to satisfy the judgment of the said Craig & Warner; that he represented the same to be unincumbered.

The Court below, by agreement, made a decree *pro forma* denying the relief prayed for in said cross bill and dismissing the same, and granting the said strict foreclosure prayed for by the said Helm in his said original bill of complaint. It was further agreed, that the case should come by appeal without the usual formality into this Court, and that, if, upon a hearing of the whole case, this Court should be equally divided

in opinion, the case should be remanded without prejudice from the said *pro forma* decree in the Court below.

The errors assigned were substantially the same as upon the former hearing, and appear in the Opinion of the Court.

*A. Lincoln* and *N. D. Strong*, for the appellants.

*W. Martin*, for Helm; *J. T. Stuart*, for Gray; and *B. S. Edwards*, for assignees of Edwards, appellees.

The Opinion of the Court was delivered by

SCATES, J.*    Helm filed an original bill to foreclose a mortgage against B. F. Edwards as mortgagee, Bailey and Marsh, as assignees of Edwards, and Craig & Warner, as purchasers of the mortgaged premises under executions against Edwards. A decree of strict foreclosure was rendered, which, upon appeal to this Court, was reversed with leave to Craig & Warner to file a cross bill. This case now comes up, upon their cross bill, which was dismissed by the Court below, and a foreclosure decreed on the original bill of Helm.

The case is, in substance, this. In 1836, Edwards bought of N. A. Ware, an undivided half of block forty nine in Lower Alton, excepting forty five feet fronting on Second street by one hundred feet fronting on Market street, which Edwards bought of William Miller, being the corner of block forty nine, and for which he gave Ware a note for $6000, due in two years, bearing twelve per cent. interest, with Helm and Gray as his securities. This note was duly assigned to plaintiffs for value paid. In 1836, but after giving the note to Ware, Edwards gave a note to Helm for $7000, due in January 1837, and bearing twelve per cent. interest, and in May 1837, gave a mortgage to Helm on the undivided interest in block forty nine aforesaid, except twenty one feet front on Second street, and seventy feet deep, and twenty six feet front on Piasa street seventy feet deep,

---

* WILSON, C. J. and CATON, J. did not hear the argument in this cause, and gave no opinion.

together with several tracts of land, which mortgage was duly acknowledged and recorded, 30th May, 1837. The plaintiffs sued Edwards, Helm and Gray, and, in October 1838, obtained judgment against Edwards for $7613·27, Helm and Gray not being served. The plaintiffs sued out executions on this judgment, which were levied on all the mortgaged premises, and on the South East quarter of the North East quarter of section seven (7) in township four (4) north, and range seven (7) west, and on twenty one feet, fronting on Second street, running back seventy feet, and which was bid in by plaintiffs' attorneys, without their knowledge, at the amount of the judgment, for which the sheriff made them deeds, which were recorded.

The plaintiffs aver that they, and their attorneys, were ignorant, in fact, of the existence of the mortgage. They pray that Helm be barred from foreclosing on these premises, or that he first pay the plaintiffs' debt, &c., or that the sale, on the executions to plaintiffs be set aside, and the judgment revived against Edwards, &c., and the liability of Helm and Gray be restored. They charge that they purchased the fee simple, for which the debt was a fair price.

Helm's defence relies upon his prior equity as mortgagee, under the mortgage taken to secure his own debt, and indemnify him in his liability as surety for Edwards; and that Edwards owned only an equity of redemption under the mortgage, which, only, was sold to the plaintiffs under the executions. And further, that during the years 1838 and 1839, Edwards owned unincumbered real estate in Madison and Macoupin counties, subject to execution on said judgment, more than sufficient to pay the same, that is to say, 3133$\frac{69}{100}$ acres in Madison county, and nine lots in Edwardsville, and thirty three lots in Alton, and 2031$\frac{24}{100}$ acres in Macoupin county, and insists that plaintiffs purchased only the equity of redemption; or if not, that it was the fault, or carelessness of plaintiffs that they levied upon the mortgaged premises, instead of these other lands. He prays a dismissal of plaintiffs' cross bill, and a foreclosure of his mortgage, charging a great depreciation of the premises by the delays interposed by the plaintiffs, and

that the mortgaged premises are not now more than sufficient to pay his debt.

Edwards states in his answer, that he offered plaintiffs in payment, unincumbered, productive real estate, which they refused, and that during the years 1838 and 1839, he had more than sufficient of personal and real estate to pay said debts; and that by the plaintiffs' proceeding in levying said execution upon the mortgaged premises, he was prevented from selling his equity of redemption therein, which he could otherwise have done for a sum sufficient to pay the plaintiffs' debt, and that his equity of redemption alone was levied upon, and sold under said executions. He prays a dismissal of the cross bill of the plaintiffs.

Bailey and Marsh answer, that on the 20th of March, 1840, B. F. Edwards executed to these defendants a deed of assignment of all his property, real, personal and mixed, except a small reservation, in trust for his creditors, which they accepted, and proceeded to execute for the benefit of all concerned. Being informed, and believing that said judgment of plaintiffs was fully satisfied, they have sold a part of the property so assigned to them. They insist that they hold the same, free of any lien of said judgment.

There were general replications to all of these answers. The exhibits and depositions are voluminous, and, therefore, I shall not set forth the evidence in detail, but the substance of the proof only. By an agreement, all the titles are admitted as set forth in the cross bill and answers.

J. M. Krum & A. Cowles were partners in the practice of law in 1838 and 1839, and attorneys for plaintiffs in the suit against Edwards. They state that they had no knowledge of any incumbrance on the lots and land levied on; that plaintiffs were non-residents, and had no knowledge of it; that Edwards desired Krum to have said interest in block forty nine levied upon, and a farm in the south east part of the county; and assured him, that it was unincumbered; and that Edwards wrote, or marked out the description of it; that they purchased in the property, under the directions of Mr. Mullanphy, of St. Louis, who put the claim into their hands for col-

lection; and that they would not have purchased, had they known it was incumbered, having no intention to buy mortgaged premises, nor had the plaintiffs. They believe they bid the value of the property, unincumbered.

The estimates set upon this property by many witnesses are higher than the bid, but differing much, one from another. It is also shown, that Edwards had other valuable real estate unincumbered, subject to execution, and amply sufficient to pay this debt.

By the testimony, the separate value of the South East quarter of the North East quarter of section seven (7), township four (4) north, and range seven (7) west, levied on and sold under the execution, and not embraced in the mortgage was $50. It further appears, that the separate value of the twenty one feet front on Second street, and running back seventy feet, being part of block forty nine, in like manner levied upon and sold, and not embraced in the mortgage, was $333.

The plaintiffs assign eleven errors:

1st. In decreeing a foreclosure against plaintiffs;

2d. In decreeing a strict foreclosure;

3d. In rendering a decree against the plaintiffs for the debt of Helm;

4th. In not giving plaintiffs the prior equity to the proceeds of the mortgage;

5th. In not compelling Helm first to redeem from plaintiffs' judgment;

6th. In not permitting plaintiffs to share rateably with Helm;

7th. In not making a decree according to the laws of Illinois, for a sale of the property;

8th. In not reviving the judgment of plaintiffs, as a lien on Edwards' property, as before the sale;

9th. In decreeing cost against the plaintiffs;

10th. In denying the relief sought in the cross bill; and

11th. A general assignment, that the decree is against law and equity.

I shall first consider the subjects embraced in the first, fourth, fifth, sixth and ninth assignments of error, and all together.

The decree on the original bill was reversed, for the apparent equity disclosed in plaintiffs' answer to it; and leave given to file their cross bill, that the Court could give affirmative relief to the plaintiffs against this mortgage, unless it should be modified by the answer of Helm, which the cross bill afforded him an opportunity to put in; and, in that event, that other relief against Edwards and the other defendants might be given, unless shown by them to be inequitable.

As between the plaintiffs and the defendants, Helm and Gray, Edwards' sureties to plaintiffs, I would lay down these principles of equity as applicable. He who asks, must do equity. 1 Story's Eq. Jur. 77, § 59 *a*. As where a debtor seeks to be relieved in equity against an usurious contract, he must pay the principal and lawful interest. Ib. If the creditor do any act which injures the surety, the surety will will be discharged. 1 Story's Eq. Jur. 321, 322, §§ 324, 325, 326. Any agreement, or act, which delays, or suspends the right to coerce payment, to the prejudice of the surety, would discharge his liability. Ib. But if the right of coercing payment is not delayed, or suspended by the creditor's act, the surety's liability is not affected. *Stringfellow* v. *Williams*, 6 Dana, 236; 2 Barb. & Har. Dig. 396, § 29; as the sureties are all principals in the debt, and ought to see it paid. *Berg* v. *Radcliff*, 6 Johns. Ch. R. 302. So, in like manner, if the creditor do any act which may put the surety in a worse condition, or increase his risk, and without his consent, he is discharged. *Law* v. *The East India Company*, 4 Vesey, 829; See, also, *Ludlow* v. *Simond*, 2 Caines' Cases, 1; *Rathbone* v. *Warren*, 10 Johns. 590; *Rees* v. *Berrington*, 2 Vesey, 540; 1 Story's Eq. Jur. 321, § 325; *Sneed's Ex'r* v. *White*, 3 J. J. Marsh. 526. Therefore equity will not relieve from accident, if it were the result of the creditor's negligence, 1 Story's Eq. Jur. 117, § 105; for he must use reasonable diligence to obtain a knowledge of the facts, which may

enable him to prevent it.    1 Story's Eq. Jur. 159, § 146; *Penny* v. *Martin,* 4 Johns. Ch. R. 568; *Marine Ins. Co. of Alexandria* v. *Hodgson,* 2 Peters' Cond. R. 518.

In the first place I would remark, that this mortgage, being entered into before the rendition of this judgment, and *bona fide,* for a valuable consideration, is a prior incumbrance to the judgment lien; and the recording of it is deemed notice in law, to all subsequent incumbrancers by judgment, &c.    R. L. 135; Gale's Stat. 157, §1; Ib. 664, §5; *Lusk* v. *Carlin,* 4 Scam. 397.

It is contended that the creditor is entitled, in equity, to the benefit of any collateral security taken by the surety, such as a pledge, mortgage, &c.; and, in like manner, the surety is entitled to the benefit of like security taken by the creditor. This doctrine, with some little modification, according to the particular circumstances of the rights of collateral securities, *inter sese,* is too well settled to be shaken.    Hopkins Ch. R. 516; 1 Story's Eq. Jur. 477, 592, 593; *Wright* v. *Morley,* 11 Vesey, 22; *Hughes* v. *Edwards,* 5 Peters' Cond. R. 657; *Moses* v. *Murgatroyd,* 1 Johns. Ch. R. 119, 129; *Phillips* v. *Thompson,* 2 do. 422; *Hayes* v. *Ward,* 4 do. 129; *Evertson* v. *Booth,* 19 Johns. 486; 8 Conn. 392; 11 do. 112; Paine, 533.    And when the debt is assigned, this collateral security goes with it.    *Jackson* v. *Blodgett,* 5 Cowen, 202; *Pattison* v. *Hull,* 9 do. 747; *Johnson* v. *Hart,* 3 Johns. Cases, 322; *Green* v. *Hart,* 1 Johns. R. 580.

But the principle has not a literal application to this case, because the collateral security taken, was first to secure the debt of Helm for $7000; and also to secure him against his suretyship.    I should not hesitate to allow plaintiffs to redeem his mortgage, and then avail themselves of any further advantage, if any there be, from it.    But it appears from the proofs, that the premises are not worth more than Helm's own debt, and the plaintiffs do not desire it on that condition.

At the time of the rendition of plaintiffs' judgment against Edwards, he possessed other unincumbered real and personal property liable to execution, amply sufficient to satisfy their debt, and which in equity and justice to Helm, they should

have taken without exhausting his special fund.   It was their negligence, that they did not search the records, become acquainted with the existence of the mortgage, and so levy upon property, by the sale of which, they could have recovered a real instead of an imaginary satisfaction.   The assurances of Edwards that it was unincumbered, will not excuse them to the prejudice of Helm, who had his mortgage duly notified to them in law by recording it.

This sale and entry of satisfaction upon the judgment, at a time when Edwards possessed so much property, and was reputed very wealthy, as is stated by the witnesses, must have lulled the vigilance of Gray, and put it out of his power, by stepping forward and paying the debt, to coerce Edwards, while solvent, to re-imburse him.   The plaintiffs cannot now revive this cause of action against Helm and Gray, and do equity to them, by putting it in their power to secure themselves out of Edward's estate, for it appears by his answer, and that of Bailey and Marsh, as well as the exhibits and proofs, that he has made an assignment to them for the benefit of his creditors; that he has also made a mortgage to Cyrus Edwards, and a deed of trust to E. Marsh, J. H. Lea, and C. Edwards, by which he has disposed of all his property, but a small reservation; and there are strong grounds to believe that the property will not fully pay his debts.   We are, therefore, of opinion, that Helm should have had a decree of foreclosure; that his is a prior and better equity than plaintiffs; that Helm should not be compelled to redeem the judgment; that plaintiffs should not share rateably with him; that Helm and Gray be forever discharged from all liability to Craig & Warner on said note; but, as between the plaintiff and Helm and Gray, all creditors seeking their rights, there ought to be no award of costs.

The second, seventh and eleventh errors assigned, question the strict foreclosure, &c.   As there are other creditors entitled to any surplus, we are of opinion that a strict foreclosure ought not to have been entered, and that these errors are well assigned.

The third error assigned, questions the decree against

Warner *et al v.* Helm *et al.*

plaintiffs for Helm's debt. The form of the decree, as entered, we think erroneous, as it leaves the question at least doubtful whether an execution could not issue upon it against the plaintiffs, who could not possibly be liable under these circumstances to such process.

The eighth and tenth errors assigned, question the denial of the relief sought against Edwards, Bailey and Marsh. There is nothing appearing in the case, showing that any decree, which might be rendered against Edwards, inequitable as against Bailey and Marsh, his assignees.

It is contended on behalf of Edwards, that he had sufficient other real and personal estate, unincumbered, to pay this debt; that he had only an equity of redemption in these mortgaged premises, and which was taken on these executions, and which was of value equal to plaintiffs' debt; and that, by taking it, he was prevented from selling it, until it has become valueless by depreciation of the property. There would be much force in this position, if it were sustained by the proofs. But it appears in evidence that Edwards desired the levy to be made upon these premises, exhibited his title papers, described his interest in them, and gave assurances that they were unincumbered; of which latter fact, the plaintiffs and their attorneys were ignorant in *fact* at the time of sale, and which, had they known it, would have prevented the levy and sale, as they had no intention of buying incumbered property. The witnesses differ in their estimates; they set a value, and a cash value upon their property, varying from $15,000 to $9000. They state that property had been very much inflated in price, and was, in 1838-9, still inflated; and that they knew of no real cash sales about that time. I think the actual sale, made by the sheriff under this execution, after giving due public notice, a fairer test of the cash value at that time, than the opinion of men, without the aid of one real cash transaction as a standard to guide their judgment. When property begins to fall, after a great inflation, and large credit speculations in it, it is difficult for any man to fix upon it its current cash value, without some real cash transaction to compare it with. The cash value of the

property, for the purposes of this inquiry, is, what it would bring. If the plaintiffs' bid was so greatly under its real value at that time, it is rather surprising that no one embraced the opportunity of such a bargain. We are of opinion that the plaintiffs made their bid for, and intended to buy, the fee in the premises, which is lost to them by the mortgage incumbrance to Helm; except the South East fourth of the North East fourth of section seven, (7,) in township four (4) north, and range seven (7) west, valued by the witnesses at $50; and except, also, the twenty one feet front on Second street, seventy feet deep, valued by the witnesses at $333.

Where the title of property purchased by the plaintiff under execution fails, and the property is recovered back from the creditor, he is entitled to a decree in equity to recover his debt from the judgment debtor. *Price* v. *Boyd*, 1 Dana, 436. So, where land is sold on execution, to which the defendant in execution has no title, and by reason of such sale, the execution is returned satisfied, the purchaser is entitled to have a decree in equity against the judgment debtor for the purchase money. *Jones* v. *Henry*, 3 Littell, 427; *Muir* v. *Craig*, 3 Blackf. 293. The plaintiff may, on motion, in some cases, have the levy and sale set aside, and so, be permitted to proceed upon his judgment at law. *Adams* v. *Smith*, 5 Cowen, 280; *Ontario Bank* v. *Lansing*, 2 Wend. 260. But in one case, it was denied. *Lansing* v. *Quackenbush*, 5 Cowen, 38.

The decree of the Court below will, therefore, be reversed, and a decree entered in this Court, foreclosing the mortgage, and ordering the sale of the premises; the proceeds to be applied to pay Helm his debt, interest and cost, and the surplus, if any, to the plaintiffs. The levy and sale by, and return of the officer upon the executions, will be set aside, except as to the forty acre tract and the twenty one feet, and the indorsement of the payment of cost by the plaintiffs to the officer, and except, also, for the aggregate sum of $383, which shall be entered as the only satisfaction by those sales, upon that judgment. The sheriff's deeds made for the same, will also be set aside and vacated, except for those two parcels of land.

The Court will order the cause to be remanded, with directions to take an account between plaintiffs and Edwards, Bailey and Marsh, of the rents and profits of the mortgaged property, received by plaintiffs while in their possession, to be applied in discharge of the yearly accruing interest of their debt, and of the principal: and also, an account with Bailey and Marsh, as such assignees of the lands, goods and chattels of Edwards in their hands, in Madison county, and the proceeds of such in said county as may have been sold, and still in their hands at the service of process; and with a further direction, that the Circuit Court enter a decree in favor of plaintiffs, that they have satisfaction of their debt out of the same.

The Court will further order, that Bailey and Marsh, on making sale of any of said lands, mentioned in the deed of assignment for this purpose, shall make a quit claim deed to the purchasers of Edwards' interest; that the cross bill, as to Helm and Gray, be dismissed, and the prayer to revive the liability of Helm and Gray be refused, and they discharged from all liability on said note: and plaintiffs recover their cost of the other defendants, out of the same estate of Edwards.

*Decree reversed.*