LAURA HOUSER, Plaintiff-Appellant, *v.* FRANK C. MICHENER, Ex'r of the Estate of PERCY JONES, Deceased, Defendant-Appellee.

(No. 12339;

Fourth District—July 3, 1974.

Ryan & Cini, Ltd., Harlan Heller, of Harlan Heller, Ltd., both of Mattoon, and Richard Kruger, of Metropolis, for appellant.

Lemna & Lee, of Tuscola, for appellee.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

The plaintiff appeals from the granting of defendant's motion for summary judgment. The plaintiff brought suit against the estate of her father, Percy Jones, based on the alleged misconduct of the father acting as executor of the estate of Jennie E. Jones, Percy Jones' mother and plaintiff's grandmother.

The will of Jennie E. Jones was admitted to probate on January 13, 1956, appointing Percy Jones executor and devising life estates in certain real estate to Percy Jones and the plaintiff. Percy Jones died on April 9, 1971, and on December 9, 1971, the plaintiff filed suit against his estate alleging that Percy Jones had breached his duty to the plaintiff while acting as executor of the estate of Jennie E. Jones from January 13, 1956, to approximately August 15, 1969.

The complaint consisted of four counts: Counts I and II alleged that from January 13, 1956, to August 15, 1969, while acting as executor of the estate of Jennie E. Jones, Percy Jones had possession of two tracts of farm land on which he conducted farming operations during the entire period and that he did not properly account to the plaintiff for her share of the net proceeds therefrom. Both Count I which was in terms of the duty owed to a tenant in common, and Count II which alleged that the defendant had breached his duty as executor to a beneficiary, set out the alleged gross income, expenses, and net income for each year from the two farms, one-half of which in each case exceeded the amount alleged to have been distributed to the plaintiff. Counts III and IV incorporated the allegations concerning Percy Jones acting as executor and operating

the farms from 1956 through 1969 and then alleged in Count III that Percy Jones had breached his fiduciary duty as an executor to the beneficiary of the estate by failing to make the assets productive of income in that he did not use adequate amounts of fertilizer, devoted a portion of one farm of alfalfa, clover, and oats (presumably in place of more profitable grain), and removed hay, silage, and other crops from one of the farms for his own use from 1958 to 1965. Count IV, rather than the common law duty of a fiduciary to maximize profits, relied on the statutory duty of an executor to manage the estate alleging that for the same reasons as in Count III, Percy Jones realized substantially less income than proper management would have produced.

On January 11, 1972, the defendant filed an answer admitting that Percy Jones had been an executor of Jennie E. Jones' estate and operated the two farms from 1956 through 1969 but denying that the defendant had not paid plaintiff her full share of the income and stating as an affirmative defense that the defendant had taken no compensation for his services as a farm manager, which if calculated would have resulted in even smaller payments to the plaintiff than she admitted receiving. After plaintiff replied denying defendant's affirmative defense, on October 11, 1972, the defendant filed extensive records from the operation of the two farms over the entire period 1956 through 1969 showing the amounts collected and disbursed including the amounts distributed to the plaintiff concluding that the amount due the plaintiff during the period would be approximately $48,000 and the amount paid her was $59,000. The checks paid to plaintiff were signed "Percy Jones, Ex." or "Percy Jones, Est."

On January 11, 1973, a stipulation was filed by the parties. It was stipulated that the $48,601.02 as shown by the defendant's further affirmative defense was the true and proper amount of plaintiff's share of the net proceeds from the two farms in issue, and that from January 13, 1956, to approximately August 15, 1969, the defendant had paid the plaintiff $50,520.88 and that the court should dismiss Counts I and II of the complaint with prejudice.

On February 1, 1973, the defendant filed a motion for leave to amend his answer alleging that the answer filed did not contain certain allegations necessary to permit the defendant to have his defense fully and fairly presented and determined. Also on February 1, 1973, the defendant filed a motion for summary judgment on the grounds that the estate of Jennie E. Jones had been closed on January 7, 1959, and that the defendant had served as executor of the estate and filed his final report on that date. It was alleged that plaintiff had filed her written entry of appearance in the estate acknowledging receipt of her full distributive

share of said estate and consenting to the closing of said estate and that the plaintiff was now barred by section 72 of the Illinois Civil Practice Act from maintaining any action against Percy Jones as executor because he was discharged more than 2 years prior to the commencement of this cause. The motion also alleged that the will of Jennie E. Jones had devised the farm land in question for life to the plaintiff and Percy Jones and thereby made them tenants in common so that the defendant only owed the duty to account to the plaintiff—not the fiduciary duty of an executor—after his discharge in 1959. On February 16, 1973, the plaintiff filed an objection to the motion for leave to amend alleging that nothing was shown to justify the amendment and that an allegation of bar by prior judgment should properly be brought under section 48 of the Civil Practice Act. Leave for the defendant to file an amended answer was granted. The defendant filed a document entitled "Entry of Appearance on Final Settlement" allegedly signed by the plaintiff and stating that Percy Jones was discharged from his duties as executor of the Jennie E. Jones estate on January 7, 1959. The plaintiff responded that this document contradicted defendant's initial answer wherein it was admitted that Percy Jones had acted as executor of the Jennie E. Jones estate up until 1969. In addition to pointing out that Percy Jones signed checks having to do with the operation of the farms up to 1969 "Percy Jones, Est.", the plaintiff presented three affidavits in opposition to defendant's motion for summary judgment, from a bank official showing that Percy Jones maintained a bank account from 1962-1969 in the name of "Jennie E. Jones Estate—Percy Jones," from the tenant farmer to the effect that the farms were known as, and did business as, the Jennie E. Jones Estate, and from the county tax collector to the effect that the land was listed as "Jennie E. Jones, Estate." Plaintiff admitted that she had signed the appearance on final settlement when her father brought it to her but alleged that it was then a blank form without the typewritten portions such as "and acknowledge receipt of our full distributive share of said estate" being present when she signed it, and that she did not know the estate of Jennie E. Jones was closed until February 1972.

Briefs were filed in the matter with the defendant contending that the plaintiff was barred by the statute of limitations in section 72 of the Civil Practice Act from maintaining Counts III and IV against Percy Jones in his capacity as executor since he was discharged more than 2 years earlier. Conversely the plaintiff contends that since the defendant did not raise the affirmative defense of the alleged 1959 discharge in his original answer, nor did he plead it or make a motion to dismiss under section 48 of the Civil Practice Act, that the defendant is barred from obtaining a summary judgment by such defense because a former adjudi-

cation must be pleaded before a court can consider it. The defendant then argued that the plaintiff could not testify to attack the appearance at the closing of the Jennie E. Jones estate because of the Dead Man's Act and contended that it does not matter that Percy Jones maintained a bank account and told the tenant and tax collector that the farms were being operated by him as the Jennie E. Jones Estate, when in fact the defendant was discharged as executor in 1959.

The court granted the defendant's motion for summary judgment on May 4, 1973, finding that upon the pleadings, affidavits presented in support of and against the motion for summary judgment and the testimony of the plaintiff in support of her counter-affidavits, there was no genuine issue of material fact to be determined. The court had earlier found that it was uncontested that Percy Jones was discharged as executor of the Jennie E. Jones estate in 1959, that plaintiff's complaint did not ask that the order be set aside, and if plaintiff had filed pleadings praying for such relief, the burden would have been on plaintiff and that she would not have been a competent witness under the Dead Man's Act.

■■■ Initially on appeal plaintiff contended that defendant should not have been allowed to amend his answer and deny that Percy Jones was the executor of the Jennie E. Jones estate between 1959 and 1969, and that the court could not consider the affirmative defense of Percy Jones' alleged discharge by the final settlement of the Jennie E. Jones estate. However, during oral argument, the plaintiff conceded that the trial court did not abuse its discretion in permitting the amendment, and properly so since section 46(1) of the Civil Practice Act provides that amendments, including a defense or cross-demand by the defendant, may be allowed at any time before final judgment. (Ill. Rev. Stat. 1973, ch. 110, par. 46(1).) There are no cases supporting the proposition that the affirmative defense was waived by failing to raise it before filing the initial answer in which defendant admitted that Percy Jones had served as executor of the estate from 1956 through 1969, and in fact it has been held that a court may consider affirmative defenses raised in a motion for summary judgment even if those matters were not raised in an answer or by motion under section 43(4) or section 48 of the Civil Practice Act. *Metropolitan Sanitary District v. Anthony Pontarelli & Sons, Inc.*, 7 Ill. App.3d 829, 288 N.E.2d 905.

■■ The issue before this court is whether the trial court erred in granting the defendant's motion for summary judgment because there was a disputed issue of fact. As noted before, the defendant's original answer admitted that Percy Jones had served as executor of the Jennie E. Jones estate until approximately April 15, 1969, whereas a later affirmative defense consisting of a court order discharging Percy Jones as executor on

January 9, 1959, was filed. It has been held that an admission in a prior answer may be used as an "evidential admission." (*Precision Extrusions, Inc. v. Stewart,* 36 Ill.App.2d 30, 50, 183 N.E.2d 547.) In addition, plaintiff filed affidavits allegedly challenging the *fact* of that discharge in the form of depositions of third parties to the effect that Percy Jones continued to act as executor and in that capacity operated the two farms in the estate of Jennie Jones until 1969.

It is uncontroverted that Percy Jones acted as executor from 1956 to 1959, but the appearance on final settlement indicates that in 1959 plaintiff entered her appearance, acknowledged receipt of her distributive share of the state, and consented to Percy Jones' discharge as executor of the Jennie E. Jones estate. Section 72 of the Civil Practice Act provides that relief from final orders must be filed within two years after their entry. (Ill. Rev. Stat. 1973, ch. 110, ¶ 72(3).) The plaintiff filed the instant suit in 1971, not directly attacking the discharge of Percy Jones in 1959, nor denying that she received her life estate in one-half the farms or other bequests or devises from the Jennie E. Jones estate, but rather alleging that Percy Jones continued to operate the farms as executor after 1959, and seeking to recover from the estate of Percy Jones one-half of the difference between what was earned and what purportedly could have been earned if Percy Jones, as executor, had operated the farms differently.

Count III is founded on common law and alleged that Percy Jones had breached his duty to make the assets in the Jennie E. Jones estate productive of income. Count III does not allege fraud, accident or mistake in the discharge of Percy Jones as executor without which such discharge is binding on all given proper notice. (Ill. Rev. Stat. 1973, ch. 3, sec. 290.) Count III does allege that "Percy Jones, as executor of the Estate of Jennie E. Jones, and as a trustee of the fiduciary, had a duty to Laura Hauser as beneficiary of the Estate of Jennie E. Jones, had a duty to make assets productive of income." A reading of Count III as a whole indicates that the terms "trustee" and "fiduciary" are simply intended to be descriptive of and to emphasize the responsibilities of the office of executor. This analysis is reinforced by the reference to plaintiff's status "as beneficiary of the estate," and the count does not allege that there was a trust created or that Percy Jones had some special fiduciary duty as a tenant in common.

It must be remembered that the counts involving accounting and the distribution of income actually earned were settled, and the counts here in issue only involve the allegation that Percy Jones could and should have caused the farms to earn more by using more fertilizer and planting different crops. We note in passing that Jennie E. Jones died in 1956 and

that until section 219a was added to the Probate Act in 1966, an executor had no control over or right to possession of a decedent's realty except to have it applied to the payment of debts pursuant to court order as provided by statute. (Ill. Rev. Stat. 1965, ch. 3, art. XIX.) Consequently, while there may be a question as to whether Percy Jones ever in fact operated the farms in which he and plaintiff were devised life estates as executor of the Jennie E. Jones estate, it is clear that summary judgment on the two viable counts founded on an alleged duty—either a common law fiduciary duty in Count III or a statutory duty of an executor in County IV—of Percy Jones as an executor following his discharge in 1959 was proper. Plaintiff acknowledged receipt of her distributive share of the estate by her entry on final appearance and consent to discharge, so she cannot now question the manner in which Percy Jones managed the farm during the time that he was executor. Percy Jones was not executor following his discharge in 1959, so neither he nor his estate may be sued for alleged mismanagement as executor during the period of 1959 through 1969. No issue of fact was created simply by showing that Percy Jones continued to refer to the farms in question as the "Jennie E. Jones Estate" and to maintain a separate checking account so designated, for accounting purposes or whatever, and the trial judge properly granted summary judgment for the defendant.

Affirmed.

CRAVEN and KASSERMAN, JJ., concur.