MILLEDGE S. DIXON *et al.*, Plaintiffs-Appellants, *v.* THE CITY NATIONAL BANK OF METROPOLIS, Defendant-Appellee.

Fifth District   No. 79-87

Opinion filed September 7, 1979.

E. Charles Geittmann, of Metropolis, for appellants.

Joseph J. Neely, of Neely & Neely, of Metropolis, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiffs, Milledge and Irene Dixon, purchased certain real estate for $4,201 at an execution sale conducted to satisfy the judgment debt owed by Roy Moller, a joint owner of said property, to the City National Bank of Metropolis, the defendant. When the sale, and the deed issued in pursuance thereof, were subsequently voided in a previous appeal because of the sheriff's failure to set off the judgment debtor's $5,000 homestead exemption (*Dixon v. Moller* (1976), 42 Ill. App. 3d 688, 356 N.E.2d 599), plaintiffs filed an amended complaint to recover their purchase money which was paid to defendant bank in partial satisfaction of the judgment debt, together with interest thereon from the date of sale.

From an order of the Circuit Court of Massac County dismissing plaintiff's amended complaint plaintiffs appeal.

The facts have been set forth in our previous opinion and need not be repeated here. In this appeal, plaintiffs argue that when an execution sale, at which they were purchasers, is rendered null and void so that they receive nothing in exchange for their consideration, they are entitled to recover back from the judgment creditor the purchase money paid at said sale and interest thereon from that date. Defendant bank responds that the purchasers at a void execution sale are legally precluded from recovering from the judgment creditor, to whom the sheriff paid the proceeds of sale, because it has long been held that purchasers at judicial and execution sales take title to property at their own risk unless they can prove, which plaintiffs have not done here, fraud, misrepresentation or a mistake of fact. Defendant further argues, however, that plaintiffs are not without a remedy because the purchasers are entitled to recovery of the amount of consideration paid for the property in question from the original judgment debtor under the doctrine of subrogation.

It has generally been held in most jurisdictions that a purchaser at an execution sale, which is either set aside for some irregularity or found to be void, is entitled to be reimbursed for the purchase money paid by him. (Annot., 142 A.L.R. 310 (1943); 30 Am. Jur. 2d *Executions* §§484 *et seq*. (1967).) The delicate issue in this case, however, is not the purchaser's right to reimbursement, which right defendant bank does not challenge, but to whom he must look for repayment. Plaintiffs' contention that the judgment creditor is liable for this amount is supported by various policy considerations. For example, as between the purchaser and the judgment creditor, it would seem that the purchaser has a greater claim to the disputed proceeds. There is little reason for a court to award the purchase money to the creditor, who is merely entitled to recover from the judgment debtor, as against the purchaser, to whom the money belongs. To hold otherwise would give the creditor a windfall at the expense of the innocent purchaser who believes he is buying the property of the debtor. (See *Martel v. Bearce* (Me. 1973), 311 A.2d 540.) Furthermore, it is the creditor who has initiated the legal process and who now seeks to benefit from an execution sale which has been subsequently voided. The most equitable solution in such a situation would seem to warrant a return of the purchase money to the purchaser by the creditor and a return of all three parties to their original respective positions. The creditor, therefore, could pursue his remedies against the person or entity justly indebted to him.

While we find much appeal to this reasoning, it appears that the long line of Illinois cases discussing this situation has reached a contrary result.

The purchaser's remedy, if any, is not against the judgment creditor but against the debtor or possibly the sheriff who conducted the sale. In the early supreme court case of *England v. Clark* (1843), 5 Ill. 486, certain personal property was levied upon and sold at an execution sale as being the property of the judgment debtor. When it was later established that the property belonged to a stranger and not the debtor, the purchaser at the sale sought recovery of the purchase money from the judgment creditor, to whom it appears the proceeds had been paid. The court, in applying the doctrine of *caveat emptor* and thus denying plaintiff purchaser any relief against defendant creditor, stated:

> "It seems there ought to be a remedy. But there are but few authorities upon the point; and the difficulty seems to be, as to the person who shall bear the responsibility, and refund the purchaser his money for which he has received no consideration. The courts seem not inclined to impose it upon the plaintiff in execution, who has but received his due, although it may not have come from his debtor, unless he is guilty of fraud, or has done some other act to charge himself; and we are of the same opinion. The liability must be upon the officer, or the defendant [debtor]. * * *[H]e [debtor] is most benefitted, by having his debt discharged by the advance and application of the purchase money." 5 Ill. 486, 492.

In 1874, the Illinois Supreme Court again addressed the applicability of the *caveat emptor* doctrine to void execution sales in *Conwell v. Watkins* (1874), 71 Ill. 488. In that case, after execution was issued following a judgment, the sheriff levied on the property of the debtor. The sheriff, however, proceeded no further with the execution until nine years later, at which time the property was sold to a purchaser. Prior to this sale, the execution lien had expired, thereby permitting the debtor to sell the property to a third party. The third party successfully brought an action to quiet title to his property caused by the unlawful execution sale prompting the purchaser to seek repayment of the purchase money. In denying relief to the purchaser, the court stated that "the maxim of *caveat emptor* well applies in such a case. Appellant [purchaser] took his chances in bidding, and is presumed to have known what he was buying, and all about it." 71 Ill. 488, 492.

In *Alday v. Rock Island County* (1892), 45 Ill. App. 62, the creditor recovered a judgment against the debtor and levied upon property which it erroneously believed belonged to the debtor. The property was sold at an execution sale with the proceeds being paid to the creditor. Upon discovering that the property belonged to a third party, the creditor refunded the purchase money and moved to set aside the original execution and sale, and for a new execution. The court in refusing to order a new execution, held, in essence, that the receipt of the proceeds

realized at an execution sale by a judgment creditor, even if said sale is void, discharges that portion of its claim against the debtor. The court justified its decision as follows:

> "[T]he sale was made to a third party who was not interested in the judgment or concerned in obtaining satisfaction of it, and who paid his money in consideration of such right or title in the lot as he might acquire or become entitled to by reason of his purchase, and he could have no right nor be entitled to any relief in the absence of fraud or misrepresentation except upon the supposition that by his purchase he acquired a right to a title. There is no warranty of title at a judicial sale, but the rule of *caveat emptor* applies and the validity of the title is at the purchaser's own risk. * * * As there is no warranty on the part of a sheriff in making a judicial sale, neither is there any implied on the part of the execution creditor. * * * Gruhl [purchaser] had no claim against appellee [creditor] and no right which it could acquire and enforce by giving him the amount that he had bid at sale. Appellee [creditor] had obtained full payment of its judgment by the sale to a third party without fraud or misrepresentation, and was under no obligation to refund to him the amount lost by his own want of ordinary care. By such voluntary act it could not again make appellant its debtor without his consent." (45 Ill. App. 62, 63-64.)

Although the court stated that the purchaser would not be entitled to reimbursement from the judgment creditor, it did not express any opinion whether such purchaser could have recovered the purchase money from the debtor had he not received repayment.

The supreme court again addressed the validity of the doctrine of *caveat emptor* at execution and judicial sales in *Hutson v. Wood* (1914), 263 Ill. 376. In that case, the judgment debtor, in an effort to recover possession of property sold at an execution sale, was successful in proving the judgment, upon which the execution, levy and sale were made, was void. The court found that the sheriff's sale was equally void and therefore held that the purchasers took no title to the property. In discussing whether the purchasers were entitled to reimbursement of their purchase money, the court stated:

> "The rule of *caveat emptor* applies to sales upon execution and judicial sales, and we know of no case where a purchaser at such sale, in the absence of a statute, has been enabled to recover the money paid, either for a defective title or where for want of power to make the sale he has acquired no title." (263 Ill. 376, 387.)

Nevertheless, as a condition to the court granting equitable relief to the owner of the property, the court required her to reimburse the purchasers for the amount they had paid to relieve the land of existing encumbrances:

"[W]here a possessor or purchaser, in good faith, of real estate has paid money to discharge an existing encumbrance, having no notice of any infirmity in his title, he is entitled to be re-paid the amount of such payment by the true owner seeking to recover the possession from him." (263 Ill. 376, 389.)

In *Hutson*, no questions were raised challenging the judgment creditor's rights to retain the proceeds of the execution sale.

Certain Illinois cases have made it clear that where the proceeds of a void execution or judicial sale have been applied to satisfying the debt owing to the judgment creditor, the purchaser at such sale, who is therefore unable to take title to the property, becomes, in essence, subrogated to the rights of the creditor against the debtor. (See *Bruschke v. Wright* (1897), 166 Ill. 183; *St. Louis & Sandoval Coal & Mining Co. v. Sandoval Coal & Mining Co.* (1886), 116 Ill. 170; *McHany v. Schenk* (1878), 88 Ill. 357; *Kinney v. Knoebel* (1868), 51 Ill. 112; *Warner v. Helm* (1844), 6 Ill. 220; *contra Borders v. Hodges* (1895), 154 Ill. 498; *Bishop v. O'Conner* (1873), 69 Ill. 431.) For example, in *Kinney v. Knoebel*, an execution sale was declared void because of certain irregularities and because it was unauthorized. Although the court held that the purchaser at a void execution sale was chargeable with notice of the improper sale and held that he acquired no absolute title to the property allegedly sold to him, it nevertheless concluded that he was not without a remedy:

"Notwithstanding the sale was unauthorized, Morrison [purchaser] has advanced money which has paid and discharged liens of creditors to a large amount on the property; and inasmuch as he acted fairly and without fraud in his purchase, it is manifestly equitable that he should be subrogated to the rights of the creditors whose debts his money has paid * * *." (51 Ill. 112, 126.)

(See also *St. Louis & Sandoval Coal & Mining Co. v. Sandoval Coal & Mining Co.*, in which the purchaser at a sale, conducted to dispose of an insolvent corporation's property and later found to be void, was held entitled to be subrogated to the rights of the creditors who had received the proceeds. Compare, however, *Borders v. Hodges* and *Bishop v. O'Conner*, in which the right of subrogation was denied to the purchasers at void administrators' sales even though the proceeds of the sales were used to satisfy the outstanding debts.) Apparently, these cases held that the doctrine of subrogation does not apply in the situation of a void judicial sale, but is confined to cases involving insurers, the relation of principal and surety, and guarantors, and to cases where a person, to protect his junior lien, is compelled to pay one which is superior in right.

■■ The review of the long line of Illinois cases, cited above, clearly indicates that the doctrine of *caveat emptor* still applies to void execution and judicial sales and that therefore the purchasers in the instant case are

precluded from recovering their purchase money from the judgment creditor. Their remedy, if any, is against the judgment debtor or sheriff; however, we need not decide this issue as it is not presented for our consideration.

Plaintiffs, however, argue that the Illinois cases of *Wilson v. Hilligoss* (1935), 278 Ill. App. 564, and *Thrift v. Frittz* (1880), 7 Ill. App. 55, support their position that they can recover the purchase money from the bank. In *Wilson*, all proceedings in a partition sale were declared void with the result that the deed to the purchaser, which deed had not been placed on record, was ordered cancelled. The court held that the checks tendered in payment for the land and still in the hands of the master awaiting the order of the court must be returned to the purchaser. In *Thrift*, the court refused to enforce a bid made by a purchaser at a void foreclosure sale. In justifying its decision, the court stated:

> "The purchaser at a judicial sale is always entitled to such interest as the defendant actually has. If a sale from any defect in the proceedings is so void as that it can not transfer such title and interest as the defendant has, then the purchaser is not bound by his bid, but may successfully resist any action seeking its enforcement." (7 Ill. App. 55, 58.)

These cases merely suggest that where the purchase money realized from a void judicial sale has not yet been applied in satisfaction of the outstanding debt, then the purchaser may recover his payment; however, once the creditor's claim is satisfied in whole or in part out of the sale proceeds, the doctrine of *caveat emptor* attaches thereby precluding any recovery from the creditor by the purchaser. See *Alday v. Rock Island County*.

The present case is similar, if not identical, to the old Texas case of *Stone v. Darnell* (1860), 25 Tex. 431. In that case, the court held that where the property of a judgment debtor was sold at an execution sale, and the debtor thereafter recovered it from the purchaser for the reason that it was exempt from execution as his homestead, the purchaser had the right to recover the purchase price from the debtor, for whose benefit the money had been paid. The plaintiff in *Stone* had initially sued the sheriff and the debtor, but not the creditor.

In conclusion, we are compelled by precedent to apply the long-standing Illinois rule that the doctrine of *caveat emptor* applies broadly to void execution and judicial sales. Accordingly, we hold that a purchaser at a void execution sale, whose money has been used to satisfy in part the claim of the judgment creditor, cannot recover the purchase money from that creditor. Although we note that there is well reasoned and persuasive authority in other jurisdictions to the contrary (see *Martel v. Bearce*; *Danner v. Murnan* (1920), 43 S.D. 289, 178 N.W. 987; *Dresser v. Kronberg*

(1911), 180 Me. 423, 81 A. 487), we are hesitant to modify a rule of long duration without an opinion of the highest court of this State.

■■ Lastly, we note that defendant bank's original answer, which was later abandoned and superseded by an amended answer following this court's original decision, stated that the bank was "willing to reimburse the said Milledge S. Dixon and Irene Dixon in the sum of $4,201.00 bid and paid at the sale of said premises in the event said sale is set aside." Plaintiffs now argue that this statement constituted an admission of liability and should be admitted into evidence. We agree that an admission against interest in a prior answer may be used as an evidential admission (*Houser v. Michener* (1974), 20 Ill. App. 3d 391, 313 N.E.2d 651); however, in the present case the statement by the bank was not an admission but merely indicated that the bank was then willing, but not lawfully obligated, to reimburse plaintiffs for their loss.

For the reasons stated, the judgment of the Circuit Court of Massac County is affirmed.

Affirmed.

KUNCE and KASSERMAN, JJ., concur.