JOHN L. HATCHER, Appellant, *v.* JARVIS BRIGGS, Respondent.

Equity Jurisdiction—Cross-bill, when Allowed in an Action at Law.— When in an action at law the defendant is entitled to relief arising out of facts requiring the interposition of a court of equity, and such facts are material to his defense in the action at law, he may set them out in a cross-bill, although such facts constitute but a partial defense to the action at law, and are not such as could be made the subject of an original bill. In such case the defendant must be without a plain, adequate and complete remedy at law.

Lien—Purchaser without Notice of Defect of Title has a Lien for his Improvements.—When a purchaser for a valuable consideration

without notice of any infirmity of his title has, by his improvements, added to the permanent value of the estate, he is entitled to full remuneration for such added value, and the same is a lien and charge upon the estate, which the absolute owner is bound to discharge before he can be restored to his original rights in the estate.

APPEAL from Benton County.

In the month of September, 1875, Jarvis Briggs commenced an action at law in the county court for Linn county against John L. Hatcher, to recover an undivided interest in certain real property, and for damages for the wrongful detention of the same. The defendant in that action appeared and filed his answer, and thereupon as plaintiff filed his complaint, in the nature of a cross-bill in equity against Jarvis Briggs, as defendant.

By the cross-bill it is alleged substantially that in 1866, Jarvis Briggs was the owner of an undivided ninth of the premises in controversy; that one Aurelia Vaughn, with other persons named, each owned an undivided ninth; that an order of partition was made by the county court upon the petition of the said Aurelia Vaughn; that commissioners were appointed to make partition; but afterwards, upon their report that the land could not be divided among the heirs without prejudice to their interests, an order directing sale to be made was issued by the county court, and the premises were sold to Hatcher for two thousand seven hundred and twenty-five dollars. The county court afterwards undertook to confirm this sale, and to direct the commissioners to execute a deed to Hatcher for the premises, which they did. The cross-bill alleges, in effect, that at the time of said sale, and ever since, plaintiff believed that said commissioners had full power and authority to sell said premises, and that he purchased the same in good faith, and paid the full value thereof; and that he was advised by the petitioner's attorney that the commissioners had full power and authority to sell the premises; and that the purchaser at said sale would get a good title; and that if plaintiff had known that the commissioners had no authority, he would not have purchased; that plaintiff imme-

diately took possession of the premises in good faith, and has ever since been in the peaceable possession of them; that while plaintiff has been in such possession under color of title, in good faith, adversely to said claim of defendants, he has expended four thousand two hundred and six dollars in making valuable and permanent improvements on said premises; that at the time said sale was confirmed by the county court, the defendant, by his guardian, received a portion of his share of the purchase-price of said premises, and afterwards the defendant, by his guardian, received from the estate of Aurelia Vaughn, defendant's mother, the balance of defendant's share of said purchase price; that said guardian held said sums of money for the use and benefit of defendant, and from time to time expended portions thereof for defendant's support, and invested seventy-eight dollars and twenty-three cents in real property for the benefit of defendant; that after defendant had arrived at the full age of twenty-one years, he received from his said guardian the possession of said real property, and five hundred and eleven dollars, in full of all claims against said guardian, with full knowledge of all the facts and circumstances concerning the sale; that the legal title to one-ninth of said premises is in the defendant, and plaintiff is the owner of the equitable title to the same; that plaintiff has filed his answer to the action at law, but has not a sufficient and adequate defense to said action, but has a good and sufficient equitable defense thereto.

The prayer asks that the legal title be decreed to the plaintiff, or that one-ninth of the purchase-money and one-ninth of the value of the improvements and taxes be decreed to be a lien upon said premises, and for general relief and costs and disbursements.

The answer denies every material allegation of the complaint, and then alleges that plaintiff has been receiving the rents and profits of said premises since 1866, amounting to nine hundred dollars. Also, that during said time plaintiff cut timber on said premises to the amount of five hundred and fifty-nine dollars, and prays that the complaint be dismissed, or if an allowance is made to the plaintiff,

then in like manner defendant be allowed for rents and profits, timber cut, etc.

The case was referred to N. B. Humphrey, to take the testimony and report the same to the court with his findings of fact and conclusions of law. The referee made his report at the October term, 1876, and the place of trial was changed to Benton county.

At the November term, 1876, of the circuit court for Benton county, the plaintiff appeared, by his counsel, and moved for a decree in accordance with the findings of the referee, but the court overruled the motion, and made a decree dismissing plaintiff's complaint and allowing the action at law to proceed to trial. From said decree the plaintiff appeals to this court. The facts established by the evidence are sufficiently set forth in opinion of the court.

*Powell & Flynn and E. C. Bronaugh,* for appellant:

Appellant is entitled to the relief prayed for because he purchased in good faith and paid for the same, and made his improvements believing he had a good title, and because the respondent, knowing all these facts and his rights in the matter, received the purchase price of the premises, thereby ratifying and confirming the sale. (Rorer on Judicial Sales, 162, 330; *Brewster* v. *Baker,* 16 Barb. 613; Herman on Estoppel, sec. 461, 464.) If the court should find that the respondent did not ratify the alleged sale, then appellant is entitled to the alternate relief prayed for because his possession was adverse and in good faith. (*Jackson* v. *Woodruff,* 1 Cow. 284; *Jackson* v. *Brink,* 5 Cow. 484; *La Frambois* v. *Jackson,* 8 Cow. 596.)

Appellant's possession was under color of title. (*La Frambois* v. *Jackson,* 8 Cow. 601, 613, 614; *Briggs* v. *Prosser,* 14 Wend. 227; *Jackson* v. *Newton,* 18 Johns. 360; 9 Johns. 178; 24 Wend. 604; 28 N. Y. 41.) A cross-bill under the common law rule was always a defense and sought affirmative relief. (4 Sandf. ch. 210; 1 Stock. (N. Y.) ch. 797.) Even if deed is void the appellant is entitled to purchase-money, interest and value of permanent improvements. (4 Or. 191; Id. 393; Story Eq. J. secs. 385, 388, 656, 1237; 1

Johns. ch. 449; 6 Am. R. 710; 13 Ohio, St. 226; 3 Stock. (N. J.) ch. 16; 3 Id. 797; 1 Cooper, 434; 25 N. J. ch. 51; 2 Johns. ch. 252, 270; Rorer on Judicial Sales, 145; 4 How. 561; Hilliard on Vendors, 388.)

*R. S. Strahan, John Burnett and Joseph Hannon,* for respondent:

A judgment or deed void upon its face, can never constitute color of title or be set up as a protection for anything done under it. (Tyler on Eject. 870, 871; 11 How. (U. S.) 415, 424; 18 Id. 56; 33 Cal. 676.) And it will not entitle the purchaser to a claim for improvements. (6 Wis. 276.) Judge Story (2 Story Eq. J. secs. 1236, 1237, and note,) has shown in what cases improvements made upon the lands of another may be decreed to be a lien upon the land.

But in all these cases the doctrine rests upon the ground that there is some fraud, or that the aid of a court of equity is required. (2 Story's Eq. Jur. sec. 1238; *Putnam* v. *Richie,* 6 Paige Ch. 390; *Winthrop, Admr.,* v. *Huntington,* 3 Ohio, 327.) And the improvements made would not constitute any consideration for an express promise to pay for such improvements. (*Frear* v. *Hardenburgh,* 5 Johns. 271.)

In any event, or any possible view that can be taken of the subject, the improvements must have been placed upon the land without notice of the defect in the title. (2 Story's Eq. Juris. secs. 799 *a* and 799 *b* and note 3.) And this raises the question whether Hatcher knew, or was bound to know, that he had no title. Whatever is sufficient to direct attention of a purchaser to the prior rights and equities of third persons, and to enable him to ascertain their nature by inquiry will operate as notice. (2 Leading Cases in Eq.; 1 Story's Eq. Jur. sec. 398, note 1; Id. 371, sec. 400.)

A party will be presumed to be acquainted with everything which appears in the papers which he executes, or which are executed and delivered by others to him in the course of the transaction. (2 Leading Cases in Eq. 142, 161; *Howard Ins. Co.* v. *Halsey,* 4 Selden, 271.)

Nothing is better established than that a purchaser will

have actual notice of everything which appears in any part of the deeds or instruments which prove and constitute the title purchased, and is of such a nature that if brought directly to his knowledge it would amount to actual notice. (2 Leading Cases in Eq. 169, and authorities there cited; *Morris* v. *Hogle*, 37 Ill. 150.) And such notice is of the most conclusive nature, and is insusceptible of being explained away or rebutted. (2 Leading Cases in Eq. 169; *Nelson* v. *Allen*, 1 Yerger, 360, 366, 367, 368, 369; *Graves* v. v. *Graves*, 1 A. K. Marsh. 121; Monroe's Exec., Bakewell 6 B. Mon. 67, 73; *Wailes* v. *Cooper*, 24 Miss. 208; *Harris* v. *Fly*, 7 Paige Ch. 421; *McAteer* v. *McMullen*, 2 Barr. 32.)

No laches is imputable to an infant during minority, because he is not supposed to be cognizant of his rights or capable of enforcing them. (Tyler on Infancy, 139.) *Caveat emptor* is the rule at all judicial sales. (9 Wheaton, 616; 24 Cal. 585; *Corwin's Lessee* v. *Benham*, 2 Ohio N. S. 36; *Owsley* v. *Smith*, 14 Md. 153; *Mason* v. *Wait*, 4 Scammon, 127; *Miller* v. *Boarman*, 13 S. & M. 100; *Bingham* v. *Maxey*, 15 Ill. 295; *Walden* v. *Griddle*, 36 Ill. 523; *Miller* v. *Finn*, 1 Neb. 255; *Creps* v. *Baird*, 2 Ohio St. 277; 41 Mo. 289.)

The value of improvements placed upon the premises were never allowed at common law. Our code only allows them in a proper case as a set-off to the rents and profits. (Civil Code, sec. 318; *Ford* v. *Halton*, 5 Cal. 322; *Welch* v. *Sullivan*, 8 Cal. 511; 35 Cal. 346; 2 Kent's Com. 334.) A purchaser at a void judicial sale cannot maintain an action to recover back purchase-money. (24 Cal. 586; 37 Ill. 150; 16 Cal. 562.) A purchaser is presumed to know the law, and if there is no fraud or misrepresentation on the part of the seller, the purchaser cannot recover money paid. (50 Cal. 337; Benjamin on Sales, 309; 20 Cal. 640.) A purchaser under a void judgment is without title and without redress. (Freeman on Judg. sec. 117; 41 Ill. 45; 7 Bush. 295; 33 N. H. 237–8.) Confirmation may make good a voidable or defeasable estate, but cannot operate upon or aid an estate which is void in law. (24 Cal. 585; 7 Am. R. 718; 33 N. Y. 537; Bingham on Infancy, 7, 9.) To be binding, the new promise or ratification must be made to the

party interested. (7 Bush. 410; 4 Sneed, 120.) In any view it must be shown that Briggs knew of the sale of his land, that it was void, and that he intended by his act to confirm it. (4 Sneed, 120; 7 Bush. 410; 3 Barr, 428.) As to right of infant after coming of age, see 33 Barb. 176. The receipt of purchase-money from a sale upon execution which was void, will not estop the party receiving the purchase-money from bringing ejectment. (27 Ill. 209; 30 Id. 85.)

The facts in this case do not constitute a defense to the action at law. The most that counsel for appellant can reasonably claim is that this cross-bill seeks to establish a lien upon the land in controversy for purchase-money, and for improvements and taxes. Those might all be recognized as valid claims, and still Briggs be entitled to recover his land. But the idea that a trespasser can officiously intrude himself upon the land of another, without color of title or right, and without the owner's consent, and thus obtain a standing in a court of equity to charge him with improvements made by the occupant for his own benefit, is certainly a new and startling doctrine. Chancellor Walworth declared he could find no authority, either in England or America, for such a doctrine, and we venture to suggest that this court will not introduce or recognize it without express legislative sanction.

By the Court, McARTHUR, J.:

This is a suit in equity brought by complaint in the nature of a cross-bill to restrain the respondent from prosecuting an action at law, commenced by him in the circuit court for Linn county, for the recovery of the possession of the one undivided ninth interest in fee-simple of the north half of the donation land of Jarvis Briggs and wife, the same being claim number 83, and notification number 1779, situate in said county, together with one thousand dollars damages for alleged wrongful withholding thereof. Appellant prays the court to declare the title to said premises to be in him, but in case the court does not find the title to be in him, then he prays a decree that he recover from respondent the amount of the purchase price paid for said

premises by him in 1866 at an alleged sale thereof, and received by respondent, with interest thereon from the time of such alleged sale, and for the present value of the permanent improvements placed on said premises since said purchase and for taxes paid.

The case was referred to N. B. Humphrey, esq., who took the testimony, and among other facts found the following: That on March 7, 1866, the county court of Linn county, on the petition of Ann E. Vaughn, who was at that time owner of one undivided ninth of said premises, as tenant in common with said respondent and others, made and entered of record an order directing said premises to be partitioned among said tenants in common, if the same could be so partitioned, and appointed three commissioners to make partition. That said commissioners afterwards reported to said county court that said premises could not be partitioned conveniently and satisfactorily, and thereupon said county court on May 8, 1866, made and entered of record an order directing said commissioners to sell said real estate, and said commissioners did, in accordance with said order, on June 30, 1866, at public auction, sell said premises, and the appellant became the purchaser thereof, for the sum of two thousand seven hundred and twenty-five dollars in gold coin of the United States, which was the full value of said premises. That appellant took immediate possession of the premises, and has up to the commencement of the said action at law been in the peaceable and quiet possession of the same. That appellant paid said two thousand seven hundred and twenty-five dollars, in gold coin, into the county court for the use and benefit of the defendant with the other tenants in common of said premises, and received a deed from said commissioners for said premises on July 3, 1866, in due form of law. That appellant at the time of the purchase had just arrived in this state. That immediately before said purchase he took the advice of two attorneys, N. H. Cranor, esq., and E. F. Russell, esq., as to the title of said premises, and that both of said attorneys advised him that he would get good title if he purchased at said sale. That appellant never

knew or heard that his title was not good until about the time said action at law was commenced. The appellant purchased the premises in good faith and occupied the same, making improvements of a permanent nature thereon of the present value of about three thousand two hundred and ninety-eight dollars, and that he has paid taxes on said premises to the amount of three hundred and forty dollars. That the respondent was a minor at the time of said alleged sale and purchase of the premises by the appellant, and that after he came of age he received from his guardian his proportion of the proceeds of the sale. These facts, as found by the referee, are fully sustained by the testimony. The result of the testimony on the point of respondent's knowledge of his rights at the time of his settlement with the guardian will be considered hereafter.

The first question to be considered is one of pleading and practice. Section 377 of the code is intended to secure several objects. The abolition of bills of revivor, bills of review, and exceptions for insufficiency, impertinence or irrelevancy, and the authorization of an original suit to impeach, set aside, suspend, avoid, or enforce a decree. It also abolishes cross-bills, but provides that in an action at law when the defendant is entitled to relief arising out of facts requiring the interposition of a court of equity, and material to his defense, he may, upon filing his answer therein, also as plaintiff, file a complaint in equity in the nature of a cross-bill, which shall stay the proceedings at law. The action at law, if thereafter proceeded with, must follow the requirements of the decree, and a judgment, if rendered, must be rendered upon the conditions contained in the decree.

In virtue of the provisions of this section it is contended that the complaint does not allege any equities of which the court can take cognizance for the reason, that under the principles of pleading and practice, as recognized and adopted by courts of equity, the matters alleged could not be made the subject of an original bill, but could only be submitted to the consideration of the chancellor by way of answer, and much stress is laid upon the words "in the

nature of a cross-bill" used in the section as sustaining the
view that nothing can avail Hatcher in this behalf except
that which would entitle him to relief under an original
bill.

We do not think that the use of the words "in the nature
of a cross-bill" justifies to the extent claimed by counsel,
the application of the rules as they existed under the old
equity practice to the complaint which the defendant is per-
mitted to file by the provisions of the section under consid-
eration. If he is entitled to relief arising out of facts requir-
ing the interposition of a court of equity, and such facts are
material to his defense of the action at law, he may file his
complaint in which he must follow the general rules of plead-
ing under the code, which requires simply a plain concise
statement of the facts constituting the cause of suit, without
unnecessary repetition, and may set forth any facts and
circumstances forming a defense, either entire or partial, to
the action at law, but they must be such facts and circum-
stances as show that he has no plain, adequate and com-
plete remedy at law. If an injury has been done or is
threatened, and there is no plain, adequate and complete
remedy at law, the case must be one of equitable cogni-
zance under our system of practice (Civ. Code, sec. 376),
and where a complaint in the nature of a cross-bill is filed
the plaintiff therein is not restricted to the allegation of
merely defensive matter, but may set forth any facts enti-
tling him to affirmative relief.

Notwithstanding the equitable and legal jurisdictions are
not so entirely blended and unified in this state as in some
others, where what has been appropriately styled the
"American system" of procedure obtains, yet we regard
section 377 as providing for no more nor less than the equi-
table answers and cross-petitions allowed by the codes of
those states where the distinction between actions at law
and suits in equity is abolished. Hence the cases in which
rules have been laid down in relation to equitable answers,
defenses and cross-petitions under codes of procedure, may
without impropriety be regarded as authority here. The
general doctrine resulting from the best considered cases is

that the defendant can defeat the action upon equitable principles, and not only defeat the action, but secure affirmative relief; and that as the defendant becomes an actor and the pleading an equity pleading the sufficiency thereof in substance, though not in form, is to be determined by the application of the general rules of equity pleading, and that as an equitable defense may be set up to a legal claim, it would be inconsistent to lay down the doctrine, that because one party is asserting a right under a legal form, that equity will not protect the equitable rights of the other party to the same extent as though the proceeding was under equitable forms. (Pomeroy on Remedies, 116; 31 Ind. 34; 12 N. Y. 156; 21 Id. 581; 7 Bush. 1; 42 Cal. 346: 16 Iowa, 175.) Even under the old equity practice, the equities subsisting between the parties did not depend upon the tribunal in which the relief was sought, and the equities of one party could not be defeated by the other party resorting to law rather than to equity for relief. "The arm of a court of equity was not thereby shortened." (*Mulford* v. *Brown*, 1 Stock. ch. 800; *Segee* v. *Thomas*, 3 Black. C. C. 11.) This latter case is in some respects similar to the one under consideration. A guardian sold lands belonging to his ward under an order from a probate court. The full value was paid and a deed executed to the purchasers. The money found its way into the minor's hands through the guardian.

Thereafter the purchaser went into possession of the land with the knowledge, assent and understanding of the minor and guardian, and made valuable improvements. He had exclusive possession, and claimed the property as his own. Afterwards the ward, within five years after she came of age, brought an action of disseisin, which was pending when the plaintiff filed his bill in equity, which, in addition to the facts just stated, alleged that the deed was defective, and prayed that the defects might be cured, that the action at law be enjoined and that defendant be decreed to convey. The jurisdiction of the court seems not to have been questioned, and the case was heard upon its merits. On the authority of *Watson* v. *Watson*, 10 Conn. 77, the deed

was declared defective for the reason, that the authority of the grantor, appointed by the probate court, did not sufficiently appear on the face thereof, and for the further reason that it had but one witness, the law requiring all deeds to be executed in the presence of two. The court was of opinion that equity should interfere, and after stating the facts, and alluding to the circumstance that the defendant received pay for the land, retained it,. never offered to return it, and while so retaining it, sought to recover the land with all the improvements, said that "these facts show a strong equity on the part of the plaintiff, and no equity on the part of the defendant," and took cognizance of the case for the reason that the plaintiff had "no full and adequate remedy at law," and granted the relief prayed. In addition to this case reference to *Bell's Heirs* v. *Barnett*, 2 J. J. Marshall, 516 ; *Thomas* v. *Thomas, Exr.*, 16 B. Mon. 142; *Bright* v. *Boyd*, 1 Story, 478; S. C. 2 Story, 607; and *Union Hall* v. *Morrison*, 30 Md. 281, will, we think, settle this question of jurisdiction in the affirmative. As these cases will be fully considered in connection with another question in this case, simple reference to them is deemed sufficient for present purposes.

From the principles stated, and the authorities referred to, we can reach no other conclusion than that the facts stated in Hatcher's complaint in the nature of a cross-bill, are sufficient to give him a standing in a court of equity.

Having disposed of the question of jurisdiction and the sufficiency of the complaint, we pass to the consideration of the other questions presented. The sale made by the commissioners was void, as were also all the orders of the county court in the partition proceedings. That tribunal proceeded in accordance with the provisions of chapter 9 of an act to establish a probate court, and define its duties, passed December 14, 1853, statutes of 1855, p. 383, and which took immediate effect. That act was repealed October 17, 1862, the repealing act taking effect June 1, 1863, (Laws of 1861, pamphlet ed. p. 127). Thus fell the jurisdiction of the county courts in matters of partition.

There can be no doubt that Hatcher purchased in good

faith, and entered into possession of the premises, under the deed executed by the commissioners. The deed is regular on its face, and gave color of title, for the rule is that any instrument having a grantor and a grantee, and containing a description of the lands intended to be conveyed and apt words for their conveyance, gives color of title to the lands described (3 Wash. R. P. 139); and this rule has been applied even where a grantor purported to convey, as administrator of the estate of a deceased person, the land of the deceased, under a special act of the legislature, which was unconstitutional and void. (*Fagan* v. *Rosier*, 68 Ill. 84.) It was strenuously insisted that the doctrine of *caveat emptor* should be as rigorously applied to the sale made by the commissioners as to other judicial sales. The general doctrine of *caveat emptor* is too efficacious to be abridged, and while we are not disposed to swell the number of exceptions to the rule, we are convinced that it should have no application in this case. One of the results of the doctrine is to charge the purchaser with the duty of inspecting the records through which title must be derived before he purchases and receives conveyances. This Hatcher did. He found a solemn judgment of a court which both lawyers and layman looked upon as valid and binding, and in the pronouncing of which all parties directly interested acquiesced. Into the judgment and into the prior and subsequent proceedings he looked, and concerning them he took counsel. They disclosed no defect in form.

The price paid was the full cash value of the premises, and the proper proportion thereof was duly paid over to R. W. Calloway, who was the guardian of Jarvis Briggs, then a minor. After entering into possession of the premises, Hatcher proceeded to put things in order, and erected valuable, useful and necessary improvements thereon. The testimony shows that Briggs knew of the purchase by Hatcher, and also of the erection of the permanent improvements. After he attained his majority he had a settlement with his guardian, which eventuated in the guardian paying him his proportion of the money derived from the

sale of the lands in controversy, for which Briggs executed the following receipt:

"ALBANY,. OREGON, July 10, 1875.

"Received of W. R. Calloway, my guardian, on settlement made by me with said guardian on this tenth day of July, 1875, the sum of five hundred and eleven dollars in United States gold coin, the same being the proceeds of my undivided interest in and to the north half of the donation land claim of Jarvis Briggs, deceased, it being claim No. 83 and notification No. 1779, in Linn county, Oregon, sold by John Smith, Walter Monteith and G. H. Hughes, as referees to John L. Hatcher for the sum of two thousand seven hundred and twenty-five dollars in gold coin, and the same being also the proceeds of my interest in the estate of Aurelia Vaughn, my mother, now deceased, after paying the expenses of said sale and the expense of settling said estate, and the expense of said guardianship of the (said) W. R. Calloway, and after further paying the sum of forty-five dollars for me for certain undivided interest in eighty acres of land in the state of Indiana to Mary J. Needham, Aurelia H. Vaughn and Ann E. Vaughn. The said interest in eighty acres of land aforesaid having been deeded to me by said Mary J. Needham, Aurelia H. Vaughn and Ann E. Vaughn, and I now receive the sum of five hundred and eleven dollars, in gold coin, of my said guardian, in full satisfaction and settlement of all my claims against my said guardian [and of all my interest in and to the estate of which he is guardian], and I hereby satisfy and confirm the purchase for me of said real estate in Indiana.

"[Signed.]                         JARVIS BRIGGS."

Standing alone, this receipt raises a strong presumption of knowledge and ratification; but when we take into consideration the evidence-in relation to his conduct and utterances at or about the time the receipt was executed, we think his full knowledge is fully proved. Just before that time, July 10, 1875, he called on his guardian's attorney and inquired if he or Mr. Calloway was ready to settle for his interest in the estate, and intimated that he would get his attorney. Subsequently, he and his attorney, and C.

and his attorney, met for the purpose of attending to the matter, and the latter's attorney told the former's attorney —both B. and C. being present—that he desired Briggs to receipt for his part of the purchase-price of the lands sold to Hatcher. Reference was specifically made to the sale made by the commissioners appointed by the county court. B. then signed the receipt above set forth, after insisting upon the words in the brackets—"and of all my interest in and to the estate of which he is guardian"—being stricken out, which was accordingly done. At the time the receipt was given, C. paid over the five hundred and eleven dollars, which included B.'s share of the proceeds of the sale, together with funds arising from other sources. Before the date of the receipt, B. had conversation about the title to the lands with three different attorneys, Mr. Flynn, Mr. Baldwin and Mr. Helm, consulting professionally with the two last named; and in his own testimony he states that he knew the character of the sale at the time he signed the receipt, qualifying that statement by saying that his knowledge was derived from others.

Hence we say that there can be no doubt that he had full knowledge of the character of the sale. Whether a minor is bound by his negligence or silence, after reaching an age at which all persons with unimpaired faculties are supposed to have reasonable discretion, comprehension and understanding, is a question which the authorities leave in doubt, but there can be no doubt of the binding force of a ratification after full age and in view of all the facts. Upon this point it has been held that where a party, after arriving at age, settles with his guardian, and receives moneys in the hands of the guardian belonging to him, and derived from a sale of his real estate, it will be presumed that he received the same with a knowledge of the source from whence it came, and that he did the act deliberately. (*Corwin* v. *Shoup*, 76 Ill. 247; and, further, that where minor heirs whose lands were sold on partition during their minority, after coming of age, with full knowledge of the facts, received their just porportion of the proceeds of the sale when collected, it was held in *Walker* v. *Mulvean*, 76 Ill. 18,

that they were estopped from asserting title to the lands so sold, and from denying the validity of the sale upon any ground, either as to the jurisdiction of the court to pronounce the decree, or for any irregularity that intervened, and that they were properly restrained from proceeding to assert title.

We have no doubt that the decision in this case might well rest upon the doctrine of ratification, but we prefer to place it upon broader grounds, and to settle, as far as this state is concerned, a more important question, properly presented by the record. Though, of course, in considering the general equities of the case, we shall not fail to bear in mind the testimony relating to the acts and to the knowledge of the respondent.

The most important question in this case is in relation to the character and extent of the relief to be afforded the appellant. And this leads to an examination of the principles of law governing industrial accessions in cases like the present one. The statutes are silent; we must go to the cases.

As near as we can ascertain, the first case in which this question attracted the attention of the court was that of *Bell's heirs* v. *Barnett*, 2 J. J. M. 516, decided in 1829. The answer was in the nature of a cross-bill, alleging that the defendant had in good faith made improvements of the value of two thousand dollars on the land which the plaintiff sought to recover, and the court, among other things, held that a person acquiring title to land, and entering on it *bona fide*, supposing it to be his own, must be paid for his improvements.

The next is *Putnam* v. *Ritchie*, 6 Paige, 390, decided in 1837. That case was thus: The plaintiff had taken from the mother of the defendants a release of a lease in fee of the rent of the premises in controversy, of which the defendant's father died seised. She acted upon the supposition that the lease was assets, and that it was for the interest of the children to be released from the payment of rent. After the plaintiff had obtained the release, he entered and made improvements. Subsequently the defendants

recovered the premises in an action of ejectment, and the bill was filed to restrain that suit until they should pay him (plaintiff) for his improvements. Chancellor Walworth dismissed the bill, holding that a person, who, under a misapprehension of his legal rights, had made large and valuable improvements on lands of minors, they were entitled to the improvements, and were not bound to pay for them. He further held that the minors were not chargeable with fraud or acquiescence until they became acquainted with their legal rights. This case has been cited with approval by several courts of New York, though in 38 Barb. 516, it is said that the chancellor's opinion could not be reconciled with the principle of the case of *King* v. *Thompson*, 9 Pet. 104, and also that it was disapproved by Mr. Justice Story. The next case arose in Maine, and was heard in May, 1841, before Justice Story and Judge Ware. It was the case of *Bright* v. *Boyd*, 1 Story, 478. The important facts were these: the real estate of a testator had been sold by an administrator with the will annexed to pay the debts of the deceased. The property brought its full value, and the purchaser believing that he had obtained a good title, entered upon the premises, and made large and expensive improvements.

Subsequently it was ascertained that the administrator had not complied with the statute, and the sale was held void and no title passed. The devisee sued in ejectment and recovered upon the strength of his legal title. The purchaser and occupant brought his bill to compel the devisee, before he should be allowed to take possession under his judgment in ejectment, to pay for the improvements, and also for money advanced in buying up outstanding claims. Justice Story hesitated. In 1835, when his work on Equity Jurisprudence was first published, he had intimated that such cases were beyond the reach of the courts of equity, except when the party seeking to recover the estate called for aid from a court of equity, or unless there was some fraud, and that where the party could recover the estate at law a court of equity could not, unless there was fraud, relieve the purchaser. (2 Story Eq. J. 1238.) As

has been stated, Chancellor Walworth had expressed the same opinion, admitting at the same time, that after an extended search he had found no case, either in America or England, where the point had been decided either way. Justice Story, though deeply impressed with the natural equity of the plaintiff's claim, declared his unwillingness to make a precedent. He examined the civil law, and explored the laws of all countries whose jurisprudence was founded thereon, and found the question placed beyond doubt or dispute, and after a postponement of the case and a mature deliberation, he came to the conclusion that the plaintiff was entitled to the full value of his improvements. In his final opinion (2 Story, 607,) he uses the following strong language: "I wish, in coming to this conclusion, to be distinctly understood as affirming and maintaining the broad doctrine, as a doctrine of equity, that so far as an innocent purchaser for a valuable consideration without notice of any infirmity in his title, has, by his improvements and meliorations, added to the permanent value of the estate, he is entitled to a full remuneration, and that such increase of value is a lien and charge on the estate, which the absolute owner is bound to discharge before he is to be restored to his original rights in the land. This is the clear result of the Roman law; and it has the most persuasive equity, and I may add, common sense and common justice for its foundation."

The next was *Thomas* v. *Thomas's Ex.*, 16 B. Mon. 424, decided in 1855, in which the court followed and approved the ruling in *Bell's Heirs* v. *Barnett, supra.*

The next was *Valle's Heirs* v. *Fleming's Heirs*, 29 Mo. 152, decided in 1859. In this case the opinion in *Bright* v. *Boyd*, is largely quoted from and strongly sanctioned, and the court held the principle of that case was the same essential principle of equity upon which rests the doctrine of compensation, of subrogation and of substitution.

The most recent case is that of *The Union Hall Association* v. *Morrison*, 39 Md. 281, decided in 1873. In that case A. purchased in good faith, for full value, without notice of any defect in his title and believing it to be good,

a lot of ground, described as part of Military Lot No. 3905, and erected thereon a valuable building. B. was the owner of a tract of land called "The Trap," but was ignorant of its precise limits until its location was ascertained by actual survey some years after the erection of the building by A., and it was found to include a part of the military lot. B. thereupon instituted an action of ejectment against certain persons in possession of said lot and recovered judgment, which was affirmed on appeal. The lot of ground which had been purchased by A. was found to be included in the lines of the tract called "The Trap," but A. was not made a defendant in the action of ejectment. The writ of *habere facias possessionem* having been obtained by B. under his judgment in ejectment, and the sheriff having declared his purpose to assert his authority by force, if necessary, A. surrendered possession of his lot. Upon a bill filed by A. against B., asking relief, it was held that A. was entitled to relief in respect to the valuable improvements made by him, but that B. should have the option to accept from A. payment for the lot of ground estimated at its just value, without the improvements thereon, and should on its receipt convey the lot to A. by a sufficient deed, or to take and hold the lot with the improvements, paying to A. the actual value of such improvements, to the extent of the additional value which they had conferred upon the land, and in default of such payment the same should be a lien and charge upon the property to be enforced by a sale thereof. This decision was based upon *Bright* v. *Boyd*, in referring to which the court said: "This careful and well considered decision meets with our entire approval, and rests upon such plain principles of equity that we have no hesitation in adopting it, as applicable to the case before us. It seems to us that so far from introducing any 'new principle into the law of the court,' as said by Chancellor Walworth it is nothing more than the application of the well settled principles of equity to a case coming clearly within their scope and operation. It can make no difference in the equitable

rights of the appellant whether it appears in the character of complainant or defendant."

Mr. Parsons (3 Con. 22), seems to regard the law as settled by the opinion of Judge Story, for, upon the strength of that opinion, he says that a court of equity will sustain against the actual owner, after recovery of the premises, a bill brought by a *bona fide* possessor for the value of his improvements.

After mature deliberation, we too have concluded to follow the principles announced in *Bright* v. *Boyd*, and the other cases sustaining the same views as more in consonance with equity and justice than the decisions in *Putnam* v. *Ritchie*.

It follows that Hatcher having purchased the land in good faith, and having good reason to regard himself as the owner thereof at the time he erected the improvements thereon, should not be ejected therefrom without compensation for those improvements.

As regards the purchase price paid by Hatcher for the land, there is no doubt that it was its full value. Neither is there any doubt that Briggs' received his full share and proportion thereof from his guardian. We can perceive no equity in permitting him to retain his share of the purchase price, and also to recover the land. Therefore, in addition to the value of the improvements Hatcher should have his purchase-money and the taxes upon the land, and the improvements should also be refunded to him.

We further think that an equitable adjustment of his case demands that Hatcher should account to Briggs for his proportion of the rental value of the premises in controversy, excluding the use of the permanent improvements during the entire time he has been in possession of the land. We do not think section 318 of the code restricts the power of a court of equity in a suit of this character.

It follows from the foregoing that the decree of the court should be reversed, and a decree entered in accordance herewith.