MARGARET E. HUTSON *et al.* Plaintiffs in Error, *vs.*
LOREN N. WOOD *et al.* Defendants in Error.

*Opinion filed April 23, 1914—Rehearing denied June 3, 1914.*

1. PRACTICE—*when right to change of venue is absolute.* The
right to a change of venue is absolute where a party brings him-
self within the provisions of the statute.

2. SAME—*when granting change of venue is discretionary.* The
statute requires reasonable notice of an application for a change
of venue, but what shall constitute reasonable notice is left to the
discretion of the judge to whom the application is made, to be de-
termined by him in view of all the circumstances in the particular
case, and this discretion will not be interfered with unless abused.

3. SAME—*when refusal to change venue is not an abuse of dis-
cretion.* It is not an abuse of discretion to refuse a change of
venue in a chancery case on the ground of the judge's prejudice,
where notice of the application was not given until 4:20 o'clock in
the afternoon of the day preceding the day at which the case was
set for hearing.

4. CONFESSION OF JUDGMENT—*an affidavit proving execution of
warrant of attorney is jurisdictional.* In a confession of judgment
in vacation the filing of an affidavit to prove the execution of the
warrant of attorney is jurisdictional, and a judgment entered with-
out it is void.

5. SAME—*when proof of execution of warrant of attorney is
insufficient.* An affidavit intended to prove the execution of a joint
warrant of attorney does not authorize the entry of a judgment by
confession in vacation, where the affidavit purports to prove the
execution of the warrant by only one of its signers and where the
jurat to the affidavit is not signed.

6. SAME—*unsigned jurat to affidavit proving the execution of
warrant of attorney to confess judgment cannot be amended by
parol evidence.* In confessions of judgment in vacation the evi-
dence of the execution of the power of attorney must unequivocally
appear in the record, and that record must be tried by itself and
its validity cannot be made to depend upon evidence *aliunde,* and
hence evidence is not admissible to prove that an unsigned jurat
to the affidavit purporting to prove the execution of the warrant
of attorney was, in fact, sworn to before a deputy clerk, who omit-
ted to sign the jurat. (*Kruse* v. *Wilson,* 79 Ill. 233, *Cox* v. *Stern,*
170 id. 442, and *Bickerdike* v. *Allen,* 157 id. 95, distinguished.)

7. SAME—*proof of execution of note construed.* A statement
in an affidavit intended to prove the execution of a promissory

note, that affiant knows "M. E. Hutson,.the maker of the annexed note," amounts to the certification of affiant's acquaintance with the maker but does not amount to a statement, under oath, that such maker executed the note.

8. SAME—*when judgment by confession is void.* A judgment by confession entered in vacation must be for the precise amount, neither more nor less, confessed by the plea of *cognovit actionem,* otherwise it is void; and it is error to include the costs for entering up judgment, where the plea merely says that the plaintiff has sustained damages on occasion of the non-performance of the several promises and undertakings mentioned in the declaration, and does not say that the plaintiff has sustained the damages mentioned in the declaration or damages to the amount mentioned in the declaration.

9. JUDICIAL SALES—*purchaser acquires no title at void judicial sale.* The power of a sheriff to sell land upon execution and to convey the land sold is statutory and depends upon a valid judgment and process, and if the judgment is void, the execution, the sale and the deed are necessarily void and a purchaser at the sale obtains no title.

10. SAME—*purchaser at void sale cannot recover money paid.* In the absence of statute the purchaser at a judicial sale cannot recover, either at law or in equity, the money paid for a defective title or for a title which is void for want of power to make the sale, the rule of *caveat emptor* being applicable to such sales.

11. SAME—*purchaser at void sale may be reimbursed for payment of encumbrance.* A purchaser in good faith at a void execution sale, believing that he was acquiring a good title, who is in possession of the real estate and who has paid an existing encumbrance on the land, is entitled, in equity, to be re-paid the amount of such payment by the real owner before the latter can recover possession from the purchaser.

12. PARTITION—*complainant may be required to reimburse purchaser at void execution sale amount paid to remove encumbrance.* Upon a bill for partition asking to have removed as a cloud upon the title a deed based upon a void execution sale, the court, on the principle that he who seeks equity must do equity, may compel the complainant to reimburse the purchaser the amount paid to relieve the land of an encumbrance, as a condition to granting the relief prayed.

13. PLEADING—*when cross-bill is germane to the original bill.* A cross-bill is germane to the original bill where the cross-complainants could not otherwise obtain the relief sought thereby, and where the cross-bill, if sustained, would prevent the relief sought by the original bill.

14. SAME—*when cross-bill is not multifarious.*  A cross-bill is not multifarious where it relates to a single transaction involving several parcels of real estate and where all the parties and all the land could not properly be investigated piecemeal.

15. PARTIES—*who is a proper party to cross-bill.*  A party who is connected with others in a single transaction concerning several pieces of real estate and whose rights might be affected by a complete disposition of the case is a proper party to a cross-bill relating to such transaction.

16. LACHES—*when owner of land is not barred by laches short of Statute of Limitations.*  The owner of land sold under a void execution sale and out of possession may sue for the recovery of the land at any time within the period of limitation fixed by statute, where there is no question of estoppel involved.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. JACOB R. CREIGHTON, Judge, presiding.

W. P. SEEBER, and D. G. THOMPSON, for plaintiffs in error.

GEORGE B. GILLESPIE, GEORGE B. HOLMES, ROYAL B. CUSHING, W. S. CANTRELL, and WILLIAM H. HART, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

In 1907, and before, Margaret E. Hutson was the owner of lot 23 in the original town of Benton, and her husband, E. G. Hutson, was the owner of lot 24 and of eighty acres of land in Franklin county. On January 12, 1907, they both executed a mortgage on all this real estate to secure their joint note to J. T. Chenault for $1000. On May 13, 1907, they both executed a mortgage on the same property to secure their joint note to J. T. Chenault for $10,000. A decree foreclosing both mortgages was rendered at the November term, 1908, of the Franklin county circuit court, and on January 30, 1909, all the mortgaged premises were sold under this decree by the master in chancery to J. T. Chenault for $13,704.13. On August 18, 1908, in vaca-

tion, a judgment by confession was entered by the clerk of the circuit court of Franklin county in favor of the Benton State Bank against E. G. Hutson and M. E. Hutson for $869.55 upon two promissory notes, and this judgment was assigned to J. T. Chenault on September 9, 1909. An execution issued on this judgment was levied upon the real estate sold by the master, redemption was made on March 22, 1910, from the master's sale, and on April 30, 1910, the premises were sold under the execution for $17,065 to Loren N. Wood and Harry C. Stotlar, to whom the sheriff later conveyed the premises. The purchasers immediately took, and have since had, possession of the premises. On May 14, 1913, Mrs. Hutson executed a quit-claim deed for an undivided eighth of lot 23 to her son, Seba F. Hutson, and two days later filed her bill in the circuit court of Franklin county for the partition of the lot. She made Loren N. Wood and Harry C. Stotlar and their tenants of the premises parties to the bill, and prayed that the judgment of the Benton State Bank, the execution, levy and sale thereunder and the sheriff's deed be set aside and the title to the premises quieted in her and Seba F. Hutson, alleging that the judgment was void for want of proof of the execution of the note and warrant of attorney on which it was based; that she never authorized the entry of her appearance or the confession of judgment; that for this reason, and others appearing on the face of the record, the judgment was void, and that the notes upon which it was rendered were not given for any debt of hers. Wood and Stotlar answered, denying the material allegations of the bill. They also filed a cross-bill, alleging that Margaret E. Hutson, E. G. Hutson and Seba F. Hutson had conspired together to obtain title to the property, which had been sold under the foreclosure decree in one tract; that the notes upon which the decree was rendered were joint notes of Margaret E. Hutson and E. G. Hutson, the last of a series of notes and renewals of former notes which were set out

in the cross-bill, running through a period of several years, representing the indebtedness of both makers; that the notes upon which the judgment was rendered were also joint notes representing the indebtedness of both makers, given in renewal of former notes signed by both makers for their joint indebtedness and were signed by E. G. Hutson for himself and as the agent of his wife; that in pursuance of the conspiracy E. G. Hutson had brought a suit in ejectment to recover lot 24 and the eighty acres of land; that the foreclosure proceedings were in all respects lawful and the judgment of the Benton State Bank, and the redemption and sale thereunder, valid and conveyed the title to Wood and Stotlar; and they pray that the title may be confirmed in them, but if for any reason it should be found that the sheriff's sale to them is void, they pray that an accounting may be had of all money expended by them on account of the property, or for taxes, special assessments or improvements thereon, and the amount found due them decreed to be paid within a short time to be fixed by the court; that in case the amount found due is not paid within the time so fixed that the title be confirmed in them, and that E. G. Hutson be enjoined from prosecuting his ejectment suit and the defendants to the cross-bill barred from any right, title or interest in the premises. A demurrer to the cross-bill was overruled, the defendants answered it, replications were filed, the cause was heard by the chancellor in open court, a decree was entered dismissing the bill and granting the relief prayed by the cross-bill, and the Hutsons have sued out a writ of error.

It is argued that the court erred in denying the complainant's petition for a change of venue on account of the prejudice of the judge. At the September term, 1912, the cause was set for hearing at the November term, on December 10. On December 3 a demurrer to the cross-bill was argued. On December 6 the demurrer was overruled and leave was given to answer the cross-bill, and on De-

cember 9 an answer was filed. At 4:20 in the afternoon of that day a notice was delivered to one of the defendants' solicitors that the complainant would on December 10, at eight o'clock A. M., apply for a change of venue on account of the prejudice of the presiding judge, who was the same judge who had heard and overruled the demurrer. The right to a change of venue is absolute where a party brings himself within the provisions of the statute, but the statute requires reasonable notice, and what is reasonable notice is left to the discretion of the judge to whom application is made in the particular case, and this discretion will not be interfered with unless abused. (*Glos* v. *Garrett*, 219 Ill. 208.) The affidavit of the complainant stated that a knowledge of the judge's prejudice did not come to her until the day the notice was given but did not state the time in the day when she acquired such knowledge. The notice was not served until late in the afternoon and the case was set for hearing the next day. Whether so short a notice was reasonable was a question to be determined by the court in view of all the circumstances, and we can not say that he abused his discretion in this regard.

The affidavit constituting the evidence of the execution of the notes and warrants of attorney on which the judgment was entered in favor of the Benton State Bank was as follows:

"Robert R. Ward, being duly sworn, says he knows E. G. Hutson and M. E. Hutson, the maker of the annexed note, and that said E. G. Hutson executed the power of attorney hereto attached in the presence of this affiant.　　　　ROBERT R. WARD.

"Sworn to and subscribed before me this 17th day of August, 1908."

This affidavit is defective for two reasons: It does not purport to prove the execution of the warrant of attorney by M. E. Hutson, and, the jurat being unsigned, there is no proof that it was sworn to. In cases of judgment by confession in vacation the filing of an affidavit proving

the execution of the warrant of attorney is jurisdictional. Without it the clerk has no authority to enter judgment, and if he does so, his act is void. (*Desnoyers Shoe Co. v. First Nat. Bank,* 188 Ill. 312.) Testimony was introduced to prove that the affidavit was, in fact, sworn to before a deputy circuit clerk, who omitted to sign the jurat. Such evidence was inadmissible. "In cases of this character the authority of the attorney to execute the *cognovit,* and of the clerk to enter up judgment in pursuance thereof, should fully and clearly appear from the papers filed upon the application for judgment. Those papers, together with the judgment, constitute the record, and, like other records, it must be tried by itself, and its validity cannot be made to depend upon evidence *aliunde."* (*Matzenbaugh* v. *Doyle,* 156 Ill. 331.) The affidavit was either sufficient or insufficient. If it was sufficient the testimony was unnecessary; if insufficient it was unavailing. In *Stein* v. *Good,* 115 Ill. 93, it was argued that the validity of the judgment did not depend upon the proof of the execution of the power of attorney, but rather upon its existence and whether it authorized the confession of the judgment, but it was said that "in this class of cases, where the whole proceeding is strictly *ex parte,* and the papers filed constitute a part of the record without any bill of exceptions making them so, public interests would seem to demand that some evidence should appear in the record showing, unequivocally, that the judgment was confessed by authority of the defendant in the judgment,—or, in other words, showing that the power of attorney on file was actually executed by him." So in *Gardner* v. *Bunn,* 132 Ill. 403, a judgment by confession entered by the clerk in vacation, where no affidavit proving the execution of the power of attorney was filed with it, was held void.

Our attention has been called to various cases in which an affidavit having an unsigned jurat has been held a sufficient basis for the proceeding involved. In *Kruse* v. *Wil-*

*son,* 79 Ill. 233, an affidavit for an attachment the jurat to which was not signed was held sufficient to give the court jurisdiction of the proceeding. In such a case the affidavit may be amended, and the writ issued by the clerk recited that the plaintiff had made oath before him. In fact, the plaintiff signed the affidavit and swore to it in the clerk's office before a deputy clerk, and the trial court heard proof of this fact. The court did not rule upon the admissibility of this evidence, but held that the court acquired jurisdiction of the attachment proceeding, not because of the recitals of the affidavit or the unsigned jurat, but because of the recital in the writ that the plaintiff had complained on oath, thus connecting the clerk directly with the oath. It was therefore held that no amendment of the affidavit was required, since it conclusively appeared from the record that it was sworn to.

In *Cox* v. *Stern,* 170 Ill. 442, an affidavit for the extension of a chattel mortgage was held sufficient though the jurat was not signed. It was said that the jurat was not, strictly speaking, a part of the affidavit but was only evidence of the fact that the affidavit was sworn to, and it was held that it might be "shown *aliunde* that the statements contained in the instrument were in truth and in fact made as they purported to be,—on oath duly administered by an officer duly authorized." This is, of course, inconsistent with the cases, both earlier and later, cited above in regard to confessions of judgment, which hold that evidence showing, unequivocally, the execution of the power of attorney must appear in the record, and that the record must be tried by itself and its validity cannot be made to depend upon evidence *aliunde.*

In *Bickerdike* v. *Allen,* 157 Ill. 95, the jurat attached to an affidavit for publication of notice omitted the words "sworn to," and read, "subscribed before me this sixth day of October, 1891." The judgment recited that "due proof of publication of the notice to the defendants" was pre-

sented to the court. This recital was sufficient to give the court jurisdiction, and it was so held. Statements made in the opinion indicate the view of the writer of it that the affidavit should be held sufficient in the absence of such recital, but we do not regard the case as going to this extent.

It is argued on the part of the defendants in error that the affidavit, in stating that affiant knows "M. E. Hutson, the maker of the annexed note," in effect declares on oath that she executed the note. We do not agree with this construction of the language. The annexed note showed on its face who were the makers, and the statement of the affiant only certifies to his acquaintance with those persons. It cannot reasonably be held to assert that they executed the note. In fact, M. E. Hutson did not sign it, and the affidavit is consistent with the admitted fact that both names were signed by E. G. Hutson.

The instruments filed at the time the judgment by confession was entered, consisted of a declaration in assumpsit with an *ad damnum* of $786.41, the two notes upon which judgment was desired, the affidavit above set out, and a plea of *cognovit actionem.* The material part of the plea states that the defendants say that "they cannot deny the action of the said plaintiff, nor that they, the defendants, did undertake and promise in manner and form as the said plaintiff hath thereof complained against them, nor but that the said plaintiff has sustained damages on occasion of the non-performance of the several promises and undertakings in the said declaration mentioned, including the sum of $78.64 for its reasonable attorneys' fees for entering up this judgment over and above all the other costs and charges by it about its suit in this behalf expended, to the amount of $4.50." The plea concludes with an agreement that no appeal or writ of error shall be prosecuted or bill in equity filed to interfere with the judgment and with a release of errors. Thereupon the clerk wrote up a judgment against

the defendants for $869.55 for wages due the plaintiff as a servant, and for costs. These papers were filed in accordance with the established practice in cases of confession of judgment in courts of record, and their filing was a condition precedent to the right of the clerk to enter the judgment. The clerk possesses no judicial power, but acts as a ministerial officer, only. The plea was essential to his authority to enter the judgment, and he could enter judgment only for the amount confessed, neither more nor less, for if he did not follow the *cognovit* as to the amount for which to enter judgment, he could ascertain the amount only by the exercise of his judgment as to the amount at which, in view of the whole record, the damages should be assessed, and this would be the exercise of judicial power. A judgment entered by the clerk in vacation for an amount different from that confessed by the plea is void. *Tucker v. Gill*, 61 Ill. 236.

It is argued that the plea confesses the damages mentioned in the declaration, $786.41, attorneys' fee $78.64, and $4.50 besides, making the total amount for which judgment was entered $869.55. But this is not the meaning of the language of the plea. It does not say that the plaintiff has sustained the damages mentioned in the declaration or damages to the amount mentioned in the declaration, but damages on occasion of the non-performance of the several promises and undertakings mentioned in the declaration. When the amount confessed is stated, it is $4.50, which is obviously an error, but since the *cognovit* was the limit of the clerk's authority he could not correct it. The judgment was therefore void because not in accordance with the *cognovit*. Since the judgment was void and no execution could be lawfully issued on it, the sheriff's sale was equally void, and his deed conveyed no title to the purchasers.

The plaintiffs in error contend that the redemption from the foreclosure sale relieved the premises from the lien of the mortgage indebtedness and extinguished all rights un-

263 − 25

der that sale and that they hold the premises by their original title, free from such lien; that Margaret E. Hutson and Seba F. Hutson are entitled to partition of the premises originally owned by her, and E. G. Hutson to maintain his ejectment suit to recover possession of the premises originally owned by him, all without regard to the mortgage debt, the foreclosure proceeding, the redemption or the sale and conveyance to Wood and Stotlar, and that the cross-bill for an accounting and to restrain the prosecution of the ejectment suit is without equity. As a preliminary proposition plaintiffs in error insist that the indebtedness secured by the two mortgages foreclosed, as well as that represented by the notes of the Benton State Bank, was the sole indebtedness of E. G. Hutson; that no part of it was a debt of Margaret E. Hutson but that she signed the notes and executed the mortgages only as surety for her husband, and that there is no equity in favor of Wood and Stotlar to have her land, which has been discharged from the lien of the mortgages by their voluntary act, applied to reimburse them for the money which they voluntarily advanced on account of her husband's debt. The evidence does not sustain this claim. The decree of foreclosure and the notes to the bank purport to be for the joint debt of the debtors, and the evidence does not establish that the fact is otherwise. All of the notes were renewals of previous notes which had from time to time been renewed and consolidated. Mrs. Hutson acquired the title to lot 23 in 1889. For several years thereafter she conducted on lot 23 a millinery store, which she afterward sold, while her husband conducted a drug store on lot 24. He was also a physician and practiced his profession. When Mrs. Hutson purchased lot 23 she mortgaged it for $1360. The next year this was included in a new mortgage covering also part of lot 24, and this mortgage was followed, from time to time, by others, including also additional indebtedness, until the two mortgages included in the foreclosure

suit were given, in 1907. During this time all the business connected with all their real estate was conducted by Dr. Hutson. Mrs. Hutson appears to have transacted no business after she sold the millinery store. Sometimes she signed the notes which were given, and sometimes her husband signed her name with her assent and acquiescence. For a time she was living in Champaign with their children while their son and daughter were attending the University of Illinois. Besides the original purchase money, mortgage and interest, the proceeds of these various notes were applied to the payment of taxes on Mrs. Hutson's property, the expenses of the family in Champaign and to other purposes. The husband had the management of the property and control of the business, of both husband and wife, and there was no apparent separation of either property or debts. On their face the debts were joint debts, and the evidence furnishes no basis for saying that he was principal and she was surety or that part of the indebtedness was his and another part hers. The chancellor found that all the indebtedness was the joint debt of husband and wife, and his finding is sustained by the evidence.

The rule of *caveat emptor* applies to sales upon execution and judicial sales, and we know of no case where a purchaser at such a sale, in the absence of a statute, has been enabled to recover the money paid, either for a defective title or where for want of power to make the sale he has acquired no title. The power of a sheriff to sell land upon execution and to convey the land sold is statutory and depends upon the validity of the process, which, in turn, must be based upon a valid judgment. If the judgment is void, the execution, sale and deed are necessarily void. Neither in law nor equity can a court aid the defective execution of a power conferred by law whereby the title of one person's property may be transferred to another. Wood and Stotlar acquired no title by virtue of the sheriff's sale and deed and have therefore no defense which

they can interpose to a suit for the possession. (*Meyer* v. *Mintonye,* 106 Ill. 414.) They did, however, purchase at the void sale in good faith, in the belief that they were obtaining a good title, and the money they paid extinguished the certificate of sale under the foreclosure proceedings. It is contended, on the one hand, that they are entitled, in equity, to be reimbursed the amount of the encumbrance from which the land was relieved by their payment before they can be deprived of its possession. On the other hand, it is insisted that they are volunteers, and having advanced their money voluntarily on the faith of a void sale must abide the consequences and are entitled to no relief. So far as the partition suit involving lot 23, in which Mrs. Hutson is complainant and is asking to have the sale removed as a cloud upon her title, is concerned, there can be no doubt of the power of the court to compel her; as a condition to granting the relief asked, to reimburse Wood and Stotlar for the amount paid to relieve her land of the encumbrance. She is seeking equitable relief, and, under the doctrine that he who seeks equity must do equity, may be compelled, before relief will be granted, to do what equity requires of her. This principle is constantly applied in suits brought to set aside void tax deeds, and the same rule applies to a suit to set aside a deed upon a void execution sale.

The cross-bill, however, is a suit by the purchasers to obtain equitable relief, and the defendants to it are not asking the assistance of the court but merely stand upon their legal rights. The question presented on this branch of the case arose upon demurrer to the cross-bill, and is whether one in the possession of real estate as a purchaser, in good faith, at a void execution sale believing that he was acquiring a good title, who has paid an existing encumbrance on the land, is entitled to be re-paid the amount of such payment by the real owner before the latter can recover the possession from him. We have held that the

purchaser of land at an administrator's sale which was void for want of jurisdiction of the persons of the heirs could not charge the land which they had inherited, with the simple debts of their ancestor paid by the purchase money. (*Manternach* v. *Studt*, 240 Ill. 464; *Borders* v. *Hodges*, 154 id. 498; *Bishop* v. *O'Conner*, 69 id. 431.) The court distinguished the last case from others which were referred to, where, the purchase money having been applied to the removal of an encumbrance on the land, the heirs were required to refund the amount paid to remove the encumbrance before they could recover the possession of the land. Though the question has not been decided in this State it has arisen and been determined in other jurisdictions, where it has been established as a doctrine of equity that where a possessor or purchaser, in good faith, of real estate has paid money to discharge an existing encumbrance, having no notice of any infirmity in his title, he is entitled to be re-paid the amount of such payment by the true owner seeking to recover the possession from him.

In *McGee* v. *Wallis*, 57 Miss. 638, a testator having by his will charged all his debts upon his real estate, decrees were entered in the probate court against his executor for certain of his debts, authorizing executions to be issued for their collection. Land of the testator was sold by the sheriff under executions issued on these decrees and the purchase money was paid to the plaintiffs in the execution. Some years after, the testator's heirs brought ejectment and recovered this land on the ground that the sale was void, the executions against the executor not authorizing a levy on real estate. Thereupon the purchaser filed a bill to restrain the enforcement of the judgment in ejectment until the plaintiffs should pay the purchase money at the sheriff's sale, which had discharged a debt of the testator which was a lien on the land. The Supreme Court reversed the decree of the trial court which dismissed the bill, stating that "the ground upon which this compensation and restitu-

tion are exacted from the owner is the plain injustice of permitting him to reap the benefits of the unrecompensed labor and money of another. The right of the purchaser to demand restitution is grounded on his good faith in making the purchase; the duty of the owner to make the restitution arises from his having received the benefit of the money of the purchaser in releasing his estate from a legal charge." It was also said that "the equity of the rule, it is clear, has no reference to the mode in which the *bona fide* purchaser had acquired possession, since there can be no policy which would prefer one mode to another, provided only the acquisition of possession was honestly made under a *bona fide* belief that the occupant acquired title."

Apparently the first case in which the principle was recognized and applied was that of *Bright* v. *Boyd,* 1 Story, 478. In that case a devisee had recovered judgment in ejectment against the remote grantee of the purchaser at a sale made by the administrator with the will annexed of the testator under a license of the probate court to sell real estate to pay the debts of the testator, which sale was void. The defendant in the ejectment suit filed his bill, setting up that his title was acquired in good faith and in the belief that the administrator had complied with all the requirements of the law and was able to give a good title, and that after the deed from the administrator the persons under whom the plaintiff claimed, confidently relying on the goodness and legality of their title, had expended large sums of money in improving the premises, in erecting a large dwelling house and stable thereon and in causing other benefits to be done to the same. The prayer of the bill was that the heir might be decreed to pay to the complainant the full value of all the improvements on the premises or to release all his right to the premises. Judge Story, after referring to the fact that the complainant could not have any relief under the Maine Betterment act because he had not been in possession for six years before action

brought, states that the question as to the right of the purchaser, *bona fide* and for a valuable consideration, to compensation for permanent improvements made upon the estate which have greatly enhanced its value, under a title which turns out defective, he having no notice of the defect, is one upon which, looking to the authorities, he should be inclined to pause, though upon the general principles of courts of equity, acting *ex æquo et bono,* there does not seem any just ground to doubt that compensation, under such circumstances, ought to be allowed to the full amount of the enhanced value. After referring to cases in which the true owner seeking the aid of a court of equity may be required himself to do equity, he continues: "But it has been supposed that courts of equity do not, and ought not to, go further and to grant active relief in favor of such a *bona fide* possessor making permanent meliorations and improvements, by sustaining a bill brought by him therefor against the true owner after he has recovered the premises at law. I find that Mr. Chancellor Walworth, in *Putnam* v. *Ritchie,* 6 Paige, 390, 403-405, entertained this opinion, admitting at the same time that he could find no case in England or America where the point had been expressed or decided either way. Now, if there be no authority against the doctrine, I confess that I should be most reluctant to be the first judge to lead to such a decision. It appears to me, speaking with all deference to other opinions, that the denial of all compensation to such a *bona fide* purchaser in such a case, where he has manifestly added to the permanent value of an estate by his meliorations and improvements, without the slightest suspicion of any infirmity in his own title, is contrary to the first principles of equity. * * * To me it seems manifestly unjust and unequitable thus to appropriate to one man the property and money of another who is in no default."

The principle by which an occupying claimant is entitled to compensation for improvements which have added to the

permanent value of the estate, requires compensation also to such a claimant, in good faith, who has paid an encumbrance, and thus added to the value of the estate by removing a circumstance which depreciated that value. The principle was so applied in *Hudgin* v. *Hudgin,* 6 Gratt. 320. The same doctrine was announced in *Valle's Heirs* v. *Fleming's Heirs,* 29 Mo. 152, in which many authorities are considered, and in *Blodgett* v. *Hitt,* 29 Wis. 169. To the same effect are *Mohr* v. *Tulip,* 40 Wis. 66, *Howard* v. *North,* 5 Tex. 290, *Mayes* v. *Blanton,* 67 id. 245, *Dafour* v. *Camfranc,* 11 Martin, 615, *Duncan* v. *Gainey,* 108 Ind. 579, and *Hatcher* v. *Briggs,* 6 Ore. 31.

It was objected on the demurrer to the cross-bill that it was multifarious, was not germane to the original bill, and that E. G. Hutson was made a party defendant to it although he was not interested in the land involved in the original bill. The cross-bill was properly filed, for the complainants therein could not otherwise obtain affirmative relief against Mrs. Hutson, complainant in the original bill. The cross-bill was germane to the original bill, for if it was sustained it would prevent the relief asked by the original bill until the complainants to the cross-bill were reimbursed for their payment of the encumbrance. E. G. Hutson was properly made a defendant and the cross-bill was not multifarious, for while the cross-bill involved several parcels of real estate the transaction was single, involving all the parties and all the land, and could not be properly investigated piecemeal. The rights of the cross-complainants all depended upon the payment of the certificate of sale, and the presence of all the parties, and a determination of all the questions affecting them, were essential to the granting of complete relief. The demurrer to the cross-bill was properly overruled.

It is argued on the part of the defendants in error that Margaret E. Hutson and E. G. Hutson have been guilty of *laches* and are estopped to deny the validity of the sale. No

*laches* for any period short of the Statute of Limitations could bar their action. The sale to Wood and Stotlar was void, and Dr. and Mrs. Hutson are entitled to sue to recover their lands at any time within the period of limitation fixed by the statute. Dr. Hutson, after the sale, sold the abstracts of title to the premises to Wood and Stotlar for $26, but this did not constitute an estoppel. He no doubt acted in as good faith as Wood and Stotlar and supposed that they had obtained a valid title. There is no reason to believe that he knew or had any reason to suppose the contrary or that they were induced to act or were in any way affected by this sale. No doubt possession was surrendered to the defendants in error under the same impression that by the sheriff's deed they had become the owners of the premises.

The decree will be reversed and the cause remanded to the circuit court, with directions to refer the cause to a master to state an account between the plaintiffs in error and the defendants in error Wood and Stotlar, charging the plaintiffs in error with the amount paid for the redemption from the foreclosure sale, ($14,594.96,) with interest from March 22, 1910, together with all taxes and special assessments on the premises, if any, paid by the defendants in error Wood and Stotlar, with interest from the date of such payments, and the additional value, if any, added to the premises by reason of any permanent improvements which the defendants in error Wood and Stotlar may have made thereon. The defendants in error Wood and Stotlar will be charged with all the rents and profits received by them from the premises. Upon the coming in of the master's report the court will ascertain the balance with which the plaintiffs in error are properly chargeable in accordance with the foregoing directions, and will enter a decree that unless such balance, with interest thereon, be paid by the plaintiffs in error to the defendants in error Wood and Stotlar within ninety days from the entry of said decree,

the defendants in error Wood and Stotlar will be entitled to a decree enjoining the prosecution of the ejectment suit mentioned in the cross-bill and dismissing the original bill for want of equity, and if such payment is not made within ninety days the court will enter such decree. If such payment shall be made within ninety days the court will enter a decree granting partition as prayed in the original bill and dismissing the cross-bill for want of equity. In any event, the decree will be at the costs of plaintiffs in error.

*Reversed and remanded, with directions.*